ALEX B. KAUFMAN (GA SBN 136097) (appearance pro hac vice pending)
AKaufman@FoxRothschild.com
FOX ROTHSCHILD LLP
999 Peachtree Street NE, Suite 1500
Atlanta, GA 30309
Telephone:     (404) 962-1000
Facsimile:      (404) 962-1200

ZACK DAWSON (NC SBN 50268) (appearance pro hac vice pending)
ZDawson@FoxRothschild.com
FOX ROTHSCHILD LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401
Telephone:     (336) 378-5200
Facsimile:      (336) 378-5400

JACK C. PRAETZELLIS (CA SBN 267765)
JPraetzellis@FoxRothschild.com
JESSICA HUANG (CA SBN 315208)
JHuang@FoxRothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, CA 94104
Telephone:     (415) 364-5540
Facsimile:      (415) 391-4436

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YURI GARMASHOV<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES PARACHUTE<br>ASSOCIATION, INC.<br><br>          Defendant. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Yuri Garmashov ("Plaintiff" or "Mr. Garmashov") by and through his

undersigned counsel, files this Complaint for breach of contract, gross negligence, and injunctive

relief against the United States Parachute Association, Inc. ("Defendant" or "USPA") and alleges

as follows:

**JURISDICTION**

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen and resident of California, and Defendant is incorporated in the State of New York, with its principal place of business in Virginia, and the amount in controversy exceeds $75,000.

**VENUE**

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because it is the judicial district in which a substantial part of the events giving rise to the claim occurred.

**PARTIES**

3.      Plaintiff is, and at all times relevant was, a citizen and resident of California residing in Sacramento County, California.

4.      Defendant is a nonstock corporation incorporated in the State of New York, with a principal place of business at 5401 Southpoint Centre Boulevard, Fredericksburg, VA 22704. Defendant regularly conducts business in California.

**FACTUAL ALLEGATIONS**

5.      The USPA is a self-governing membership association for the sport of skydiving. The USPA serves as an advocate and lobbyist for the sport of skydiving, disseminates a monthly publication for its members, and coordinates competitions and awards.

6.      In addition to the functions described above, the USPA publishes and maintains skydiving training manuals as well as issues licenses and instructional ratings to members that qualify them to teach other skydivers.  Skydivers utilize their USPA-issued ratings and credentials in order to obtain paid work in the skydiving sector.

7.      An instructor rating is a credential that the USPA issues to qualified individuals who wish to teach skydiving to others as an economic opportunity.  The USPA offers varying levels of ratings.

8.      Mr. Garmashov has been a dues paying member of the USPA since 2000.  He is a professional skydiving instructor, has completed over 9,100 skydives, has conducted numerous skydiving training courses across the world, and has coordinated stunts that have been

showcased on digital media platforms such as YouTube.

9.     Prior to the events at issue in this case, Mr. Garmashov held several examiner ratings issued by the USPA.  He earned a majority of his income by training skydivers using those ratings.

**The USPA Wrongfully Revokes Mr. Garmashov's Ratings**

10.     In August of 2015, Mr. Garmashov was approached by another skydiver named Rob Pooley.

11.     Mr. Pooley's Tandem Examiner rating had been suspended by the USPA, and he was thus unable to train skydivers by himself.

12.     Mr. Pooley asked Mr. Garmashov if he could work under his instruction until the USPA reinstated Pooley's ratings.

13.     Mr. Garmashov agreed to work with Mr. Pooley on the condition that Mr. Pooley could only work with students and conduct classes when Mr. Garmashov was present to personally supervise.

14.     In 2015, Mr. Garmashov and Mr. Pooley helped several individuals achieve their certifications in that manner.

15.     On May 20, 2016, Mr. Garmashov left the United States for the summer to work abroad.  Mr. Garmashov did not return to the United States until August 2, 2016.

16.     Before Mr. Garmashov left for the summer, Mr. Pooley told Mr. Garmashov that his ratings suspension would be lifted in June, and when that happened that he would return to training individuals by himself.

17.     Mr. Garmashov and Mr. Pooley corresponded over the summer, but did not conduct any more trainings together.

18.     On August 6, 2016, there were two fatalities during a tandem jump at the Lodi Parachute Center (the "Lodi Center") in California.

19.     When Mr. Garmashov spoke with others in the skydiving community about the incident, Mr. Garmashov discovered that while he was out of the country for the summer,

///

Mr. Pooley had forged his signature on the certification paperwork for the fatal skydive.  This certification paperwork with Mr. Garmashov's forged signature was used by the skydiving instructor who was killed at the Lodi Center in the tragic accident that also took the life of another skydivers.

20.     As Mr. Garmashov had been out of town on August 6, 2016, and out of the country for several months prior, he unequivocally lacked any form of participation or involvement in the instruction, certification, or related events of the August 6, 2016 skydive described above.

21.     The USPA suspended Mr. Garmashov's instructor ratings in response to the August 6, 2016 fatality, despite Mr. Garmashov's explanations that he had been out of the country when the instructor had been trained and that his signature had been forged.

### The USPA Failed to Follow Its Promised Procedures

22.     Membership in the USPA is governed and regulated by the USPA Governance Manual ("Governance Manual").  A true and correct copy of the current Governance Manual is attached hereto and incorporated herein by reference as **Exhibit 1**. Upon information and belief, the Governance Manual in effect in 2016 was identical in all relevant respects.

23.     As noted above, one of the benefits received in return for membership in the USPA is eligibility to earn skydiving licenses and ratings.  A skydiver cannot earn a rating from the USPA without membership in the USPA.

24.     Once the USPA awards a rating, the USPA Governance Manual provides the procedure that the USPA must follow in order to suspend that rating.  *See* Ex. 1 at § 1-6 ("Disciplinary Actions").

25.     The Governance Manual constitutes part of a binding agreement between the members of the USPA and the USPA itself.  As part of this covenant, the USPA agrees that in exchange for members paying their annual membership fees, the USPA will award ratings to qualified individuals and will abide by the disciplinary procedures set out in the Governance Manual.

26.     The Disciplinary Action section of the Governance Manual "establishes the

procedures for instituting an action against a member, the minimum due process that must be accorded a member against whom such action is brought and the appellate review that is available before such action is finalized." Ex. 1 at § 1-6.3.

27.     The Governance Manual specifies that only certain conduct constitutes a violation sufficient enough to warrant a disciplinary proceeding that may lead to the revocation of credentials.  Per the Governance Manual, disciplinary actions will be taken only against a USPA member who:

a.   Willfully, flagrantly or continuously violates the USPA Basic Safety Requirements;

b.   Aids and abets a willful violation of the USPA Basic Safety Requirements;

c.   Is so grossly negligent in conduct or acts as to imminently imperil fellow skydivers or aircraft, persons or property on the ground, or wantonly disregards personal safety or the safety of others;

d.   Engages in any conduct as a skydiver that a person of reasonable prudence would anticipate as being likely to bring public contempt upon their person, upon skydivers or upon USPA;

e.   Engages in any conduct that reasonably jeopardizes the well-being of USPA;

f.   Willfully falsifies any document, certificate or record connected with or relating to skydiving;

g.   Willfully and knowingly misrepresents any material fact in connection with any application filed with USPA;

h.   As the owner or controlling manager of a Group Member drop zone, willfully or flagrantly violates the terms of the Group Member Pledge; or

i.   Has a duty of confidentiality and breaches that duty.

Ex. 1 at § 1-6.4(B).

28.     When a possible disciplinary situation comes to the attention of the USPA, an investigation is begun by the USPA's Compliance Group.  *See* Ex. 1 at § 1-6.5.  The Compliance Group is charged with investigating violations and handing down discipline to USPA members

who are found in violation of the provisions of the Governance Manual. *Id.*

29.     According to the Governance Manual, if there is enough evidence for a prima facie case of a membership violation, the individual at issue must be notified. *See* Ex. 1 at § 1-6.5(C). The notification must cite the specific violation they are alleged to have committed, sufficient facts to support the allegation, and provide a statement advising the member of their "right to offer…any statement or evidence in defense or as grounds for mitigation, and their right to an informal hearing before the regional director and a hearing before the [Compliance Group]." *Id.*

30.     In suspending Mr. Garmashov's ratings, the USPA failed to follow most of the procedures and safeguards set out in the Governance Manual.

31.     For example, in direct violation of his rights under the Governance Manual, during his unofficial hearing, Mr. Garmashov was not allowed to have an attorney present, nor was he allowed to call Mr. Pooley as a witness. *See* Ex. 1 at § 1-6.5(E)(2)–(3).

32.     In addition, under the Governance Manual, Mr. Garmashov was entitled to a presumption innocence, and the burden of proof was on the Compliance Group to prove his violation by a preponderance of the evidence. Ex. 1 at §§ 1-6.5(F)(1); 1-6.5(G).

33.      Mr. Garmashov attempted to provide detailed evidence showing that he was out of the country when the certification of the tandem instructor at the Lodi Center was signed, as well as a notarized letter from Mr. Pooley confessing to forging Mr. Garmashov's name without Mr. Garmashov's knowledge or participation ("Pooley's Confession"). A true and correct copy of Pooley's Confession is attached hereto and incorporated by reference as **Exhibit 2**.

34.     Despite this exonerating evidence, the Compliance Group investigating Mr. Garmashov stated that they did not believe Mr. Pooley had written the letter and admonished Mr. Garmashov to "tell the truth" about his situation.

35.     Also in violation of his rights under the Governance Manual, Mr. Garmashov was never provided with any of the evidence against him or with any of the notes from his unofficial hearing. *See* Ex. 1 § 1-6.5(C).

36.     Despite these transgressions, Mr. Garmashov performed his obligations under the

USPA membership contract and willingly participated in the full appeals process laid out in the Governance Manual.

37.     Despite the violations of Mr. Garmashov's rights under the Governance Manual, his appeals were denied by the USPA, and Mr. Garmashov's examiner ratings to date remain suspended, essentially eliminating his ability to work in his profession.

38.     USPA's suspension of Mr. Garmashov's examiner ratings has cost Mr. Garmashov damages in an amount to be proven at trial, but in excess of $75,000.

39.     The USPA egregiously violated the membership agreement with Mr. Garmashov by failing to provide him with his contractual rights to a fair and impartial hearing process, to see the evidence against him, to have an attorney represent him, and to present evidence.  The USPA did so with a willful, wanton, and with a conscious disregard for Mr. Garmashov's rights.

## **COUNT I**

### **Breach of Contract**

40.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 39.

41.     In exchange for membership dues, the USPA agrees to provide certain benefits to members, and to abide by certain rules, including those set out in the Governance Manual (the "Membership Agreement").

42.     The Membership Agreement is a valid and enforceable contract between Mr. Garmashov and the USPA.  Mr. Garmashov and the USPA entered into this contract.

43.     Mr. Garmashov has fully performed his obligations under the Membership Agreement.

44.     The USPA's suspension of Mr. Garmashov's examiner ratings in flagrant disregard for the disciplinary procedures laid out in the Governance Manual, which the USPA was obligated to follow, constitutes a material breach of the Membership Agreement.

45.     The USPA's breach of contract constitutes a willful violation of Mr. Garmashov's rights as per the Membership Agreement and has caused damages to Mr. Garmashov in excess of $75,000.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

46.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 45.

47.     The Membership Agreement is a valid and enforceable contract between Mr. Garmashov and the USPA.

48.     Mr. Garmashov has fully performed his obligations under the Membership Agreement.

49.     Included in every contract, including the Membership Agreement, is an implied duty of good faith and fair dealing between the parties.

50.     Specifically, the USPA had a duty to act in good faith and deal fairly with Mr. Garmashov with respect to the disciplinary rules contained in the Governance Manual.

51.     The USPA breached its duty of good faith and fair dealing by flagrantly disregarding the disciplinary procedures laid out in the Governance Manual and suspending Mr. Garmashov's examiner ratings.

52.     The USPA's breach of the implied covenant of good faith and fair dealing constitutes a willful violation of Mr. Garmashov's rights as per the USPA Membership Agreement, and unfairly interfered with Mr. Garmashov's rights to receive the benefits of the Membership Agreement.

53.     The USPA's conduct has caused damages to Mr. Garmashov in excess of $75,000.

## COUNT III

### Gross Negligence

54.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 53.

55.     The USPA had a duty to Mr. Garmashov to provide a fair and impartial hearing in the event of a membership dispute, and allow him all of the rights set out in the Governance Manual.

56.     The USPA breached its duty to Mr. Garmashov by refusing to presume him innocent, refusing to give him a fair and impartial hearing process, refusing to allow him to see the evidence against him, refusing to allow him to have an attorney represent him, and refusing to allow him to present fully exonerating evidence.

57.     The USPA breached its duty to Mr. Garmashov despite knowing that Mr. Garmashov was innocent of any wrongdoing, and with a willful and conscious disregard for Mr. Garmashov's rights.

58.     The USPA also published a statement blaming Mr. Garmashov for the fatalities at the Lodi center, despite knowing that Mr. Garmashov was innocent of any wrongdoing, and with a willful and conscious disregard for Mr. Garmashov's rights.

59.     These acts by the USPA constituted a lack of any care and/or were so unreasonable that the USPA knew or should have known that injury to Mr. Garmashov was highly probable.

60.     As a direct and proximate result of the USPA's willful misconduct, Mr. Garmashov was injured and is entitled to recover compensatory damages in an amount to be proven at trial.

61.     As alleged herein, the USPA is guilty of oppression, fraud and/or malice as defined in California Civil Code section 3294, and Mr. Garmashov should recover, in addition to actual damages, exemplary and punitive damages in an amount to be proven at trial.

## COUNT IV

### Violation of Cal. Bus. & Prof. Code. § 17200 *et seq.*

62.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 61.

63.     Sections 17200 *et seq.* of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair," and "fraudulent" business practice.

64.     Section 17200 prohibits any "unfair . . . business act or practice."  As described in the preceding paragraphs, the USPA flagrantly violated their own disciplinary procedures in

order to blame Mr. Garmashov for the fatalities at the Lodi Center, including refusing to allow

him counsel, or to examine witnesses, as well as making public statements regarding his alleged

culpability despite knowing that he was innocent of any wrongdoing.

65.     The USPA's above-mentioned acts constitute unfair and deceptive practices in

violation of California Business & Professions Code sections 17200 *et seq.*

66.     The USPA's conduct caused and continues to cause substantial injury to

Mr. Garmashov.

67.     As a direct and proximate result of Defendant's unfair and deceptive acts,

Mr. Garmashov has suffered an injury in the form of lost future earnings.

68.     Mr. Garmashov has been damaged by the USPA's actions in an amount to be

proven at trial.

69.     Additionally, pursuant to California Business & Professions Code section 17203,

Mr. Garmashov is entitled to an injunction requiring the USPA to reinstate his examiner ratings

and afford him all attendant privileges of USPA membership.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief:

      a.   Injunctive relief requiring Defendant to reinstate Mr. Garmashov's examiner

          ratings and afford him all attendant privileges of USPA membership;

      b.   Judgment in Mr. Garmashov's favor against Defendant for damages,

          including exemplary damages pursuant to California Civil Code section 3294,

          attorneys' fees, costs and interest; and

      c.   For such other relief as the Court may deem proper.

Dated:  July 7, 2020                    FOX ROTHSCHILD LLP


                      By:   /s/ Jessica Huang
                            ALEX B. KAUFMAN
                            ZACK DAWSON
                            JACK C. PRAETZELLIS
                            JESSICA HUANG
                            Attorneys for Plaintiff

# EXHIBIT 1

# USPA *Governance* MANUAL

## FEBRUARY 2019



©2019 UNITED STATES PARACHUTE ASSOCIATION®

Available from: UNITED STATES PARACHUTE ASSOCIATION

5401 Southpoint Centre Boulevard   |   Fredericksburg, Virginia 22407
(540) 604-9740   |   (540) 604-9741 (fax)   |   Email: uspa@uspa.org

*Printed in the United States of America*   |   Edition #34, February 2019

# USPA

# *Governance*

# MANUAL

## FEBRUARY 2019



©2019 United States Parachute Association®

Available from:

UNITED STATES PARACHUTE ASSOCIATION
5401 Southpoint Centre Boulevard
Fredericksburg, Virginia 22407
(540) 604-9740
(540) 604-9741 (fax)
Email: uspa@uspa.org

*Printed in the United States of America*

Edition #34, February 2019

# TABLE OF CONTENTS

*Section 1: Governance*

| | | |
|---|---|---|
| 1-1: | Constitution and By-Laws | 5 |
| 1-2: | Structure, Procedures, and Responsibilities | 10 |
| 1-3: | Election of USPA Officers | 19 |
| 1-4: | Regional Directors | 20 |
| 1-5: | Action Between Semi-Annual Board Meetings | 22 |
| 1-6: | Disciplinary Actions | 24 |
| 1-7: | Governance Committee | 31 |
| 1-8: | USPA Executive Committee | 33 |

*Section 2: Finance*

| | | |
|---|---|---|
| 2-1: | Financial Limitations and Procedures | 39 |
| 2-2: | Finance & Budget Committee | 42 |

*Section 3: Elections*

| | | |
|---|---|---|
| 3-1: | Election of USPA Board Members | 47 |
| 3-2: | USPA Regional Map | 51 |

*Section 4: Communications*

| | | |
|---|---|---|
| 4-1: | USPA Publications | 55 |
| 4-2: | USPA Website | 58 |
| 4-3: | USPA Copyrights and Trademarks | 59 |
| 4-4: | USPA Trademarks and Logos | 60 |

*Section 5: Safety & Training*

| | | |
|---|---|---|
| 5-1: | Safety & Training Committee | 67 |

*Section 6: Competition*

| | | |
|---|---|---|
| 6-1: | Competition Committee | 71 |

*Section 7: Membership*

| | | |
|---|---|---|
| 7-1: | Membership Services Committee | 75 |
| 7-2: | Group Membership Committee | 76 |

*Appendices*

| | | |
|---|---|---|
| A: | Indemnification and Limitation of Liability | 79 |
| B: | Whistleblower Policy | 80 |

# Section 1

## GOVERNANCE



**United States Parachute Association®**
Copyright © 2019 by USPA

# 1-1: Constitution and By-Laws

## Constitution

1. The name of the corporation is United States Parachute Association, Inc., hereinafter referred to as USPA.

2. The purposes for which USPA is formed are as follows: To encourage unity among all persons interested in skydiving; to promote safety in all skydiving activities in the United States, to sanction skydiving competitions; to document officially all national and world skydiving records set by citizens of the U.S., to promote and encourage the study and knowledge of skydiving among the membership and the public at large; to cooperate with all government agencies connected with aeronautics or aeronautical activities; to compile information regarding the science of skydiving and to edit, publish, and disseminate the same; to select and train the United States Parachute Team for world competition.

3. The principal office of USPA is in Fredericksburg, Virginia, or as otherwise directed by the USPA Board of Directors (BOD).

## By-Laws

### ARTICLE I—MEMBERSHIP

#### SECTION 1: TYPE

A. Regular Membership
   1. Annual Membership
   2. Lifetime Membership

B. Temporary Membership

C. Honorary Membership
   1. Annual Honorary Membership may be conferred by the BOD for significant contributions to skydiving.
   2. Honorary Lifetime Membership may be conferred by the BOD upon distinguished individuals who have made outstanding contributions to skydiving and, in particular, to USPA.
   3. Honorary Lifetime Office may be conferred by the BOD upon individuals who have distinguished themselves as pioneers and leaders in the skydiving field and, through personal sacrifice, have dedicated themselves to USPA.

D. Group Membership is available to skydiving centers, clubs, and schools.

#### SECTION 2: REQUIREMENTS

Any individual or group interested in skydiving is eligible for membership, except that the USPA Executive Committee may declare any individual or group ineligible for membership and the applicable USPA Regional Director may declare a group ineligible for membership for causes consistent with those set forth in Article I, Section 6.A, as grounds for censure, suspension, or expulsion. Such denial shall be subject to review by the BOD. Upon submission of a proper application for membership and upon request, any individual or group so denied eligibility for membership will be granted a hearing before the BOD at its next regularly scheduled meeting. Written notice of this meeting will be given to the individual or group at least thirty (30) days prior to the meeting. Following such hearing, a majority vote of the BOD present at that meeting will decide the matter. Application for membership shall be in such form as prescribed by the BOD.

#### SECTION 3: VOTING POWERS

Voting powers shall be vested solely in regular members.

#### SECTION 4: DELINQUENCIES

Notification of failure to pay indebtedness, other than dues, to USPA, when due, shall be sent to the delinquent member within thirty (30) days following USPA notification of the delinquency. If the said indebtedness shall not have been paid within thirty (30) days after mailing of the notice, the membership of said individual or group shall be terminated.

#### SECTION 5: REINSTATEMENT

Any individual or group whose membership has been terminated for indebtedness or nonpayment of dues may reapply for membership in the same manner as new members after payment of indebtedness.

## SECTION 6: DISCIPLINARY ACTION

A. Any member may be censured, suspended or expelled by the USPA Executive Committee, with such action subject to review by the BOD, for causes including but not limited to transgression of basic ethical principles of USPA as detailed in the Constitution, By-Laws, and policies of USPA. If requested, the member shall be granted a hearing before the BOD at its next scheduled meeting. Notice in writing shall be given the individual at least 30 days in advance. A majority vote of the BOD shall decide any action on the matter.

B. Under a reciprocal agreement with the Canadian Sport Parachuting Association (CSPA), USPA respects and honors disciplinary actions of the Board of Directors of the CSPA and accepts the due process procedures of the CSPA as satisfying those guaranteed in subparagraph A above.

## SECTION 7: DUES AND ASSESSMENTS

Each member shall pay dues as prescribed by the BOD.

## SECTION 8: RENEWAL

Individuals or groups may apply annually for membership renewal in a manner prescribed by the BOD or USPA Executive Director.

## ARTICLE II—ASSOCIATION MEETINGS

### SECTION 1: GENERAL MEMBERSHIP MEETINGS

General Membership Meetings (GMM) may be called by the BOD, the USPA Executive Committee, or the USPA President. A minimum of one such meeting shall be held each calendar year. A quorum of the general membership shall be 10% of the total membership. The total membership count used for this quorum shall be the number of eligible voters as of a date that occurs at least 10 days prior to but not more than 50 days prior to the published GMM. Regular members are entitled to vote either in person or by proxy at the meeting.

### SECTION 2: BOARD OF DIRECTORS MEETINGS

A minimum of two regular meetings of the USPA Board of Directors shall be held each year. The BOD shall approve the date, time and location of regular meetings of the BOD. Special meetings of the BOD may be called by the BOD, the USPA executive committee, or the USPA President. Any one or more members of the BOD who is not physically present at a special meeting of the BOD, or all BOD members participating in a special meeting, may participate by means of a conference telephone or similar communications equipment or by electronic video screen communication. Board members shall be physically present at regular meetings of the BOD in order to participate, unless participation by conference telephone or similar communications equipment or by electronic video screen communication is permitted by the BOD. Participation by such means shall constitute presence in person at a special meeting or, if approved by the BOD, at a regular meeting, as long as all persons participating in the meeting can hear each other at the same time and each director can participate in all matters before the BOD, including, without limitation, the ability to propose, object to, and vote upon a specific action to be taken by the BOD.

## SECTION 3: NOTICE

Individual notice shall be sent to each USPA Director not less than 30 days prior to any regular BOD meeting. Special meetings of the BOD may be held with a reasonable number of days' notice. Notice in an official publication shall appear at least thirty (30) days prior to any GMM.

## SECTION 4: AGENDA

In the case of any regular BOD meeting, the USPA Secretary shall furnish each USPA Director with a proposed agenda at least 15 days prior to the meeting.

## SECTION 5: RULES OF ORDER

Roberts Rules of Order shall govern USPA in all cases to which they are applicable and in which they are not inconsistent with the By-Laws.

## ARTICLE III—BOARD OF DIRECTORS

### SECTION 1: GENERAL

USPA shall be governed by a board of directors consisting of at least eight USPA National Directors. Additionally, USPA Regional Directors shall be elected from each region. All USPA Regional Directors shall reside in the region from which they were elected throughout their term. Both USPA National and Regional Directors shall carry equal vote and authority.

### SECTION 2: TERM

All USPA Directors shall be elected for three-year terms and may be re-elected. They shall hold office until the election and seating of their successors.

### SECTION 3: RESIGNATION

The resignation of any USPA Director shall be tendered to the BOD.

### SECTION 4: REMOVAL FROM THE BOARD OF DIRECTORS

Removal of any BOD member must be made in accordance with all applicable state and federal law.

## SECTION 5: VACANCY

Any vacancy among USPA National or Regional Directors may be filled for the unexpired term by special election or nomination from the BOD, including the outgoing director, and election by the current BOD at the meeting wherein the vacancy becomes a matter of official business.

## SECTION 6: QUORUM

A quorum shall consist of a majority of the BOD, not counting absent directors who are members of the Armed Forces, but in no case shall the quorum be less than one third of the total number of duly qualified USPA Directors. Directors who are present at a meeting but not present at the time of a vote due to a conflict of interest or related party transaction shall be determined to be present at the time of the vote for purposes of this Section.

## SECTION 7: ACTION BY BOARD

Except as otherwise required by law, the certificate of incorporation, these by-laws or other provisions of the Governance Manual, the vote of a majority of the directors present at the time of the vote shall be the act of the BOD, if a quorum is present at such time. Any action required or permitted to be taken by the BOD may be taken without a meeting if all members of the BOD consent to the adoption of a resolution authorizing the action. Such consent may be written or electronic. If written, the consent must be executed by the director by signing such consent or causing his or her signature to be affixed to such consent by any reasonable means including, but not limited to, facsimile signature. If electronic, the transmission of the consent must be sent by electronic mail that sets forth, or is submitted with, information from which it can reasonably be determined that the transmission was authorized by the director. The electronic mail should state that the director intends transmission of the e-mail to be the director's signature, but failure to say so shall not invalidate a director's vote if transmission of the e-mail was intended as the director's signature. The resolution and the written consents thereto by the members of the BOD shall be filed with the minutes of the proceedings of the BOD.

## ARTICLE IV—OFFICERS

### SECTION 1: GENERAL

The Officers of USPA shall consist of President, Vice President, Secretary, and Treasurer. All officers shall be members of the BOD. The BOD may elect additional officers as it deems necessary, and may hire an executive director. The USPA Executive Director may, in turn, hire an administrative staff.

## SECTION 2: TERMS

The officers shall hold office for a term of three years and shall be elected by the USPA Directors at the first BOD meeting following election. They shall hold office until the election and seating of their successors.

## SECTION 3: RESIGNATION

The resignation of any officer shall be tendered to the BOD and may be voted on by the BOD at any regular or special meeting.

## SECTION 4: VACANCY

If any vacancy shall occur in any office, the BOD shall elect a member to fill the unexpired term.

## SECTION 5: CHAIRMAN OF THE BOARD

The BOD may elect a chairman of the board. The person designated shall be selected for his or her experience and wisdom, and shall give guidance and counsel to the BOD.

## SECTION 6: PRESIDENT

The USPA President shall preside at all meetings of USPA and the BOD; he or she shall enforce the By-Laws of USPA and perform all executive and other duties ordinarily pertaining to the office of president. The USPA President shall serve as an ex-officio member of all committees.

## SECTION 7: VICE PRESIDENT

In the absence of the USPA President, the USPA Vice President shall assume presidential responsibilities. In the event the USPA Vice President is not available, a temporary presiding officer shall be selected from the BOD.

## SECTION 8: SECRETARY

The USPA Secretary shall give notice of all meetings of USPA and of the proceedings at all meetings; shall have custody of the seal of USPA, and shall affix same to papers and documents as required; shall keep a register of the name and address of each member; shall notify members accepted into USPA; shall conduct such correspondence as is not conducted by the USPA President; and shall conduct such other duties as directed by the BOD.

## SECTION 9: TREASURER

The USPA Treasurer shall oversee the duties of the USPA Executive Director regarding his or her responsibilities to receive all monies payable to USPA and shall deposit same in a bank designated by the BOD; shall have charge of all funds and securities of USPA; shall disburse funds as approved by the BOD; and shall keep accounts of the financial affairs of USPA. An annual financial report shall be printed and be available to all USPA members.

### SECTION 10: DELEGATION OF DUTIES

The USPA Secretary and Treasurer may delegate their respective duties, but not their respective responsibilities, to a member of the USPA administrative staff.

## ARTICLE V—ELECTION OF THE BOARD OF DIRECTORS

### SECTION 1: ELECTION SCHEDULE

Triennial election of the BOD will be held every three years in accordance with the guidelines and dates located in the Election Section.

### SECTION 2: CANDIDATE QUALIFICATION

USPA HQ will review all submissions to make sure each candidate meets all qualifications, responsibilities and deadlines in the Election Section. Those candidates meeting all requirements will be placed on the ballot.

### SECTION 3: ELECTION OF NATIONAL DIRECTORS

Candidates for USPA National Director who have met all the requirements listed in the Election Section will be placed on the ballot. No limitation is placed on the number of candidates for national director. All members may vote for any number up to eight of the proposed candidates for USPA National Director. The eight candidates receiving the highest number of votes shall be certified as USPA National Directors for the ensuing three years.

### SECTION 4: ELECTION OF REGIONAL DIRECTORS

Candidates for USPA Regional Director who have met all requirements listed in the Election Section will be placed on the ballot. No limitation is placed on the number of candidates in any one region. However, members may vote for only one USPA Regional Director candidate. Members, other than those currently living or serving overseas, may not vote for a USPA Regional Director candidate outside the voting member's region. The candidate in each region receiving the largest number of votes shall be certified as USPA Regional Director for the ensuing three years.

### SECTION 5: DEFINITION OF REGIONAL AREAS

Regional areas for election purposes are defined as the fifty states of the Union subdivided as delineated, approved, published, dated by the BOD and published in the USPA Governance Manual.

### SECTION 6: ELIGIBILITY TO VOTE

All current regular members at the time of the election are eligible to vote.

### SECTION 7: VALIDATION OF BALLOTS

Ballots will list all USPA National Director candidates and USPA Regional Director candidates for each region. Ballots marked with more than eight USPA National Director candidates will be declared invalid and not counted in the USPA National Director balloting. Ballots marked with more than one USPA Regional Director candidate will be declared invalid and not counted in that regional election. Paper ballots that do not contain the voting member's original signature will be declared invalid.

### SECTION 8: VOTING DEADLINE

All ballots must be received by the date and time specified on the ballot. Ballots received after said date will not be counted.

## ARTICLE VI—SEAL

The seal shall consist of a circular die with two concentric circles, between which shall be the corporate name of USPA. The State in which incorporation occurred and the year of incorporation shall appear in the center of the die.

## ARTICLE VII—FISCAL YEAR

The fiscal year of USPA shall begin on 1 January and end on 31 December of the calendar year.

## ARTICLE VIII—COMMITTEES

### SECTION 1: USPA EXECUTIVE COMMITTEE

The BOD shall elect an executive committee composed of six members of the USPA Board of Directors. The USPA Executive Committee will consist of the USPA President, Vice President, Secretary, Treasurer, one other BOD member, and the Chairman of the Board, all of whom have the right to vote on the USPA Executive Committee. The USPA Executive Committee shall be authorized to act in place of the BOD between meetings of the BOD, except on matters that under state law require action by the full BOD, and shall be authorized to act on such matters as may be assigned to it by the BOD. USPA Executive Committee actions are effective when taken (or the date properly specified by the Executive Committee) but shall require subsequent ratification by the BOD.

## SECTION 2: STANDING COMMITTEES

The BOD shall establish the following standing committees:

Elected Committees:
- Executive
- Regional Directors

Appointed Committees:
- Competition
- Finance & Budget
- Governance
- Group Membership
- Membership Services
- Safety & Training

## ARTICLE IX—AMENDMENTS

A.  Proposals to amend the Constitution and By-Laws shall be submitted in writing to the BOD.

   1. The proposed amendment must be included in the call of the meeting at which it is to be considered.

   2. The proposal shall then be acted upon by the BOD at a full USPA Board of Directors Meeting.

B.  A two-thirds majority of the BOD present may approve any amendment to these By-Laws except sections referring to size, composition, and election of the USPA Board of Directors.

## ARTICLE X—INDEMNIFICATION AND LIMITATION OF LIABILITY

In almost all cases, members of the USPA Board of Directors are released of any legal or financial liability stemming from their actions as board members. The full policy on indemnification and limitation of liability appears as Appendix A.

# Section 1-2: Structure, Procedures, and Responsibilities

## 1-2.1   INTRODUCTION

The United States Parachute Association is a not-for-profit membership association dedicated to the safe activity of skydiving and to those who support it. It is principally an individual membership association but also enlists group members to supplement and augment USPA's effort to fulfill its mission.

A.   To represent and support the membership, the individual members of USPA elect a board of directors which determines the policies for the association, and governs the association according to those policies. In turn, the board employs a staff to perform the administrative and management business tasks inherent within a not-for-profit corporation and to support the board in the design, implementation, and management of USPA programs.

B.   A series of policy documents are written and maintained by the board and staff which designate the operating structure of association programs and the procedures by which the association will be represented, governed, and administrated.

C.   This policy document designates the organizational structure, procedures, and responsibilities of the board, its committee system, and the administrative structure and responsibilities of the professional staff as outlined in the USPA constitution and bylaws.

## 1-2.2   GENERAL MEMBERSHIP

A.   Procedures: Once per calendar year, USPA conducts a general membership meeting to which all of its members are invited. Open discussion on general association matters between the board and the members will be placed on the agenda of this meeting, unless otherwise directed by the USPA president. All USPA members in good standing who are present at a general membership meeting have an equal vote and an equal right to voice their opinions on all the agenda items for that meeting.

B.   Minutes: The minutes may be corrected following the meeting, and must be approved by the general

membership at the next general membership meeting before they become official.

## 1-2.3   BOARD OF DIRECTORS

A.   Structure and procedures
1.   The board uses a committee system to conduct board activities when developing policy and programs.
2.   The board itself is governed by its officers, who include the USPA chair of the board, president, vice president, secretary, and treasurer. These officers, along with one board member-at-large, comprise the USPA Executive Committee. The Executive Committee acts on behalf of the board during the interim periods between board meetings and is authorized to conduct association business when the board is not in session.

B.   Board meetings
1.   Board meetings include both committee meetings and plenary sessions. The board receives reports and acts upon committee recommendations in the form of motions presented by the committee chairs.
2.   Principally, the board operates as a committee-of-the-whole only when considering matters which do not fall within the designated responsibilities of any specific committee.
3.   While the committees and other individuals or entities are scheduled to report in agenda order, the president may permit changes in reporting order if it facilitates the overall conduct of the meeting. The minutes, however, will be prepared in agenda order, and motions will be numbered in the order they appear in said minutes, independent of the order they were reported during the meeting.
4.   Board meetings will be open to all USPA members unless otherwise directed by the president, with the concurrence of the board. Closed board meetings will be open to only members of the board, plus any other individuals specifically invited by the presiding

chair of the meeting to attend that particular closed session. Closed sessions during board meetings are primarily conducted in cases where personalities are being discussed, such as disciplinary actions.

5. When non-members of the board wish to speak before the board during the plenary session, they will only do so after being recognized and invited to speak by a member of the board.

6. For any individual to address the board on a specific issue during the plenary session, the issue must be placed on the agenda in advance, unless an exemption is granted by the president.

7. The minutes of a board meeting may be corrected following the meeting, and will become official only when approved by the board at the next meeting.

C. Responsibilities

1. The board has the following specific responsibilities:
   a. determine the policies of the association
   b. establish the operating budget for the association
   c. develop and establish programs for the association in concert with the headquarters staff
   d. hire and remove if necessary an executive director to serve as the association's chief staff executive

2. The individual members of the board have the following specific responsibilities:
   a. Each board member must represent the interests of the regional or national constituency for whom that board member represents.
   b. All board members are expected to consider the interests of the association as a whole in all deliberations.
   c. For all time-sensitive matters which require action by a member of the board or other non-staff USPA representative—
      (1) The staff should prompt that person to fulfill this action by a specific deadline and send copies of this correspondence to the Executive Committee.
      (2) If no response is forthcoming within that allotted time frame, the Executive Committee should take

direct action on the matter.
      (3) If the Executive Committee, in turn, fails to act in a timely manner, headquarters is authorized to take direct action on that matter to the best of its ability.

3. Officers of USPA
   a. chair of the board: The chair of the board is the titular leader of the board and has the following specific responsibilities:
      (1) provide guidance and serve as wise counsel to the board and its members
      (2) serve as a member of the Executive Committee
   b. president: The president is the chief elected officer of the association, and has the following specific responsibilities:
      (1) preside at all board and general membership meetings
      (2) enforce the bylaws of the association
      (3) in collaboration with the executive director, serve as spokesperson for the association
      (4) chair of the executive committee
      (5) select and remove the committee chairs, except the chairs of the Safety & Training Committee and Group Membership Committee which may only be removed by a 2/3 vote of the full board of directors
      (6) serve as the direct supervisor of the executive director on behalf of the USPA Executive Committee
      (7) appoint a board member to serve a three-year term on the National Skydiving Museum's Hall of Fame Selection Committee
      (8) perform all executive and other duties ordinarily associated with the office of the president not otherwise stated herein
   c. vice president: The vice president has the following specific responsibilities:
      (1) in the absence of the president, assume the responsibilities and duties of the president
      (2) serve as confidant and objective third party for the president in board matters
      (3) serve as a member of the Executive Committee

d. secretary: The secretary is responsible for the records and correspondence of the association and has the following specific responsibilities:

(1) general membership meetings
  i. ensure that a written public notice of all general membership meetings is provided to USPA members via an official USPA publication at least 30 days in advance of the convening date
  ii. ensure that the agenda is posted on USPA's web page prior to each general membership meeting
  iii. prepare an agenda to be available to all attendees of meeting
  iv. prepare or approve draft minutes of the meeting within 30 days of adjournment
  v. ensure the minutes are available to the USPA membership upon request

(2) board meetings
  i. provide written notice of all board meetings to the board at least 30 days in advance
  ii. solicit agenda items from all board members 30 days in advance of the meeting
  iii. prepare and distribute the agenda at least 15 days in advance of the meeting
  iv. ensure that the agenda is posted on USPA's web page prior to each board meeting
  v. prepare or approve draft minutes of the meeting within 30 days of adjournment
  vi. ensure the draft minutes of the meeting are distributed to all board members within 30 days of adjournment
  vii. allow 15 days from date of distribution of the minutes for corrections from board members
  viii. ensure that corrected draft minutes are made available to the membership
  ix. conduct board mail voting, as required
  x. conduct other duties as described in Article IV, Section 8 of the USPA bylaws

(3) serve as member of the Executive Committee

e. treasurer: The treasurer will oversee all financial transactions, reporting, budgeting, and accounting for USPA and has the following specific responsibilities:

(1) ensure that all necessary financial internal controls are in place to prevent fraud, waste, and abuse
(2) present the necessary bank resolutions for banking authority on behalf of USPA to the officers of the corporation for signature
(3) present the annual budget to the board
(4) approve obligations and disbursement as set forth in USPA Governance Manual, Section 2-1, Financial Limitations and Procedures
(5) prepare the annual financial report and ensure its availability to the membership
(6) perform other duties as outlined in Governance Manual, Section 2-1, Financial Limitations and Procedures or as directed by the president

4. Related Party Transaction Policy
a. Any transaction, agreement or other arrangement in which the Association or any affiliate of the Association is a participant and in which any of the following persons has a financial interest is classified as a "related party transaction" and is prohibited unless paragraph 4.c below is complied with:

(1) Any director, officer or key employee of the Association or of any affiliate of the Association, or the trustee of a trust affiliate;
(2) Any relative of any director, officer or key employee of the Association or of any affiliate of the Association, or of the trustee of an affiliate that is a trust; or
(3) Any entity in which any individual described in clauses (1) or (2) of this subparagraph has a 35% or greater

ownership or beneficial interest or, in the case of a partnership or professional corporation, a direct or indirect ownership interest in excess of 5%.

b. For purposes of paragraph 4.a:

(1) An "affiliate" of the Association is any entity controlled by or under common control with the Association.

(2) A "key employee" is any person who is in a position to exercise substantial influence over the affairs of the corporation or other entity, as referenced in 26 U.S.C. § 4958(f)(1)(A) and further specified in 26 C.F.R. § 53.4958-3(c), (d) and (e), or succeeding or successor provisions of the United States Code or Code of Federal Regulations.

(3) A "relative" of an individual means his or her (i) spouse, ancestors, brothers and sisters (whether whole or half-blood), children (whether natural or adopted), grandchildren, great-grandchildren, and spouses of brothers, sisters, children, grandchildren, and great grandchildren; or (ii) domestic partner as defined in Section 2994-a of the New York Public Health Law.

(4) A "transaction, agreement or other arrangement" does not include a reimbursement of expenses incurred in the conduct of the business of the Association (or an affiliate of the Association) under an accountable arrangement.

c. Requirements to proceed with any related party transaction (as defined in paragraph 4.a), in addition to any applicable requirements in C.5 below:

(1) The board of directors (or trustees) of the Association or affiliate that is to participate in the related party transaction shall determine the transaction is fair, reasonable and in the corporation's (or trust's) best interest at the time of the determination.

(2) Any director, officer or key employee (or trustee, in the case of an affiliate that is a trust) who has an interest in a related party transaction shall disclose in good faith to the board of directors (or trustees) of the entity that is to participate in the transaction, or an authorized committee thereof, the material facts of the disclosing person's interest.

(3) If an affiliate of the Association that is a charitable corporation or trust that is to enter into the transaction, and a related party would have a substantial financial interest in the transaction, the board of directors or trustees of that corporation or trust, or an authorized committee of the board or of the trustees, shall:

i. Approve the transaction by not less than a majority vote of the directors, trustees or committee members present at the meeting (none of whom shall be Conflicted Persons, as defined in 5.a below); and

ii. Contemporaneously document in writing the basis for the board's, trustees', or committee's approval, including its consideration of any alternative transactions.

(4) The fixing of salaries of any officers of the Association who are compensated, if not done pursuant to the by-laws, shall require the affirmative vote of a majority of the Association's entire board of directors unless a higher percentage is required by the by-laws or the certificate of incorporation.

5. Conflict of Interest Policy

a. To Whom Conflict of Interest Policy Applicable. This Conflict of Interest Policy applies to officers, directors and key employees (as defined in 4.b.2 of the Related Party Transaction Policy above) of the Association. Any officer, director or key employee of the Association will be referred to herein as an "Association Insider." An Association Insider who has a Conflict of Interest (as defined in paragraph 5.c below) will be referred to in this Policy as a "Conflicted Person."

b. Procedures in Event of Conflict of Interest.

(1) Related Party Transactions.  As detailed in the Association's Related Party Transaction Policy set forth above, the Association and its affiliates (as defined in that Policy) may engage in a related party transaction, as described in that Policy, only by complying with that Policy.

(2) Conflicts of Interest.  In the event of a Conflict of Interest (as defined in paragraph 5.c below), if the Conflicted Person is present at the meeting of the Board of Directors or other situation at which action involving the Conflict of Interest is to be discussed or considered, the Conflicted Person may answer questions from the Board of Directors or the officer(s) or employee(s) of the Association who or which is or are considering taking action that involves the Conflict of Interest, but the Conflicted Person shall excuse himself or herself from the meeting of the Board of Directors or other situation before, and so long as, action involving the Conflict of Interest is being deliberated, considered or decided upon by the Board of Directors or other officer(s) or employee(s) discussing or considering such action. The Conflicted Person shall not attempt to influence improperly the deliberation or voting on the matter giving rise to the Conflict of Interest. Notwithstanding the foregoing requirements, a Conflicted Person with respect to a Conflict of Interest may consent to action that has been approved without his or her participation, for such purposes as providing unanimous consent in writing to action by the Board of Directors.

c.  Meaning of "Conflict of Interest."

(1) Conflict of Interest arises when the Association enters into or considers entering into a transaction if an Association Insider's objectivity in deciding on the transaction would reasonably be expected to be adversely affected by either (A) a financial interest of the Association Insider in the transaction or (B) a familial, financial, professional, employment or other relationship of the Association Insider with a person who has a financial interest in the transaction. For that purpose, a "transaction" does not include a reimbursement of expenses incurred in the conduct of the business of the Association under an accountable arrangement.

d.  Disclosure.

(1) Initial and Annual Director Disclosure. Before any individual first elected as a director of the Association is seated as a director, and annually thereafter while he or she serves as a director, the individual shall complete, sign and submit to the secretary of the corporation a written statement identifying, to the best of the director's knowledge, any entity of which such director, or a family member of the director, is an officer, director, trustee, member, employee or direct or indirect owner (including as a partner, shareholder or sole proprietor, but other than as an owner of shares in a publicly traded entity) and which either has a relationship with the Association or regularly conducts business in some way related to parachuting and/or skydiving, and any transaction in which the Association is a participant and in which the director or a family member of the director might have a conflicting interest. The policy shall require that each director annually resubmit such written statement. The secretary of the corporation shall provide a copy of all completed statements to the chair of the audit committee or, if there is no audit committee, to the president, as chair of the Board of Directors.

(2) Prompt Disclosure of Specific Conflicts. Each Association Insider who becomes aware of circumstances that could be deemed to be a Conflict of Interest involving that Association Insider or a member of his or her family shall disclose the Conflict of Interest or potential Conflict of Interest, and the reason why it is or may be a Conflict or Interest, as soon as is practicable after the Association Insider becomes aware of it.  Such disclosure shall be made to the Audit Committee of the Board of Directors or, if none, to the Board of Directors.

(3) Disclosure to Board of Directors. Association Insiders shall also make disclosure at the Board of Directors' meeting or other situation at which the matter from which the Conflict of Interest or potential Conflict of Interest arises is to be considered, before the matter is discussed or considered, if the Association Insider is present at the meeting.  If the Association Insider is not present at the meeting, such Conflict of Interest or potential Conflict of Interest shall be disclosed by the President, if it is known to him or her, except that if such Association Insider is the President (or if the President is absent), it shall be made by the Secretary.

(4) Documentation. The existence and resolution of any Conflict of Interest, as defined in paragraph 5.c above, and the resolution of any uncertainty, as provided in paragraph 5.e.2 below, shall be documented in the Association's records, including in the minutes of any meeting at which the Conflict of Interest was discussed or voted upon.

e. Resolution of Doubtful Cases.

(1) The foregoing provisions are necessarily general. For example, they do not definitively establish what is meant by "objectivity" or "would reasonably be expected to be adversely affected," or what is meant

by a "familial, financial, professional, employment or other relationship." For that reason, it may not be possible to determine with certainty from the foregoing provisions whether a given set of circumstances creates a Conflict of Interest.

(2) If an Association Insider is uncertain as to whether a Conflict of Interest exists, the Association Insider shall disclose all material facts relating to the potential Conflict of Interest as provided in paragraph D above, and in that event, or if any other person raises a question as to whether a Conflict of Interest exists in a particular case, the Board of Directors or the Audit Committee of the Board shall determine whether or not a Conflict of Interest exists. The Association Insider for whom a Conflict of Interest potentially exists may answer any questions from the Board or Audit Committee concerning the matter, after which the Association Insider shall excuse himself or herself from the meeting before, and so long as, the Board or Audit Committee discusses and determines whether a Conflict of Interest exists.

## 1-2.4   COMMITTEES

The board uses a committee system as its vehicle for policy development, initiation, and review in specific functional areas. The designated standing committees are listed in Article VIII of the constitution and bylaws.

A. Structure

1. All committees other than the Executive Committee are comprised of a chair and a maximum of six other voting members.

   a. All voting committee members must be members of the board.

   b. The president is a non-voting advisor to all committees. The executive director or a representative appointed by the executive director may serve as a non-voting member at the request of the chair.

   c. The president appoints the committee chairs and may remove them

B.  Procedures

1.  Policy or program proposals may be initiated by the president by assigning specific proposals to the appropriate committees for evaluation and consideration.

2.  Committees may initiate proposals based on either internal or external input and may undertake projects based upon existing policies and programs or as part of the policy and program development process.

3.  Committee members are expected to thoroughly research and develop policy and program proposals in committee.

4.  After development, committee members are expected to debate the merits of each proposal and reach a consensus in committee before the policy or program is presented to the board for approval.

5.  If a proposed policy or program has resource implications, it must be presented to the executive director during the developmental stage to solicit pertinent information regarding its effect on the association.

6.  During board meetings, each committee should work from a prepared committee agenda.

    a.  The agenda should include all proposed policy or program initiatives and other modifications which require a vote of the board.

    b.  The president may refuse to accept a motion raised during a board meeting if it was not first placed on a committee agenda but may be overruled in this decision by a majority vote of the board.

7.  When proposing policies and programs for board approval, a committee should conduct a final review of an issue then prepare a written motion based on a consensus reached by a majority of the committee's voting members.

8.  Dissenting opinions should be expressed by the chair so that the board has a clear understanding of the proposal and its issues, thus enabling the board members to make an informed decision.

    a.  At board meetings, motions should be presented to the board by the committee chair as part of the committee report during the plenary session.

    b.  For time-sensitive issues arising during interim periods between board meetings, the

chair may present committee proposals to the Executive Committee for consideration, subject to approval by the board.

C.  Responsibilities

1.  Committee chair: The chair is responsible for ensuring that the committee fulfills its responsibilities set forth in the constitution and bylaws and this policy document and has the following specific responsibilities:

    a.  select committee members with the concurrence of the president and remove committee members as deemed prudent

    b.  prepare a committee agenda and submit it to committee members and headquarters 30 days prior to each meeting of the board

    c.  once the agenda is prepared, provide courtesy copies to all board members and ensure that it is posted on USPA's website

    d.  initiate projects within the domain of the committee and act upon those assigned by the president

    e.  direct the committee's activities between board meetings to ensure that routine committee actions are not delayed or withheld until board meetings

    f.  on time-sensitive matters, ensure that committee action is taken during the interim between board meetings and forwarded to the Executive Committee for interim action, as required

    g.  as a matter of general practice, ensure that committee agenda items are thoroughly researched, prepared, and coordinated within the committee prior to board meetings, recognizing that unforeseen requirements may emerge at board meetings

    h.  keep the president and executive director informed about committee projects, policy issues, and impending committee proposals

    i.  when developing programs which impact USPA resources, coordinate proposed committee action with the executive director

    j.  during board meetings

        (1) chair the committee meetings

        (2) present a committee report and all committee motions to the board during the plenary session

        (3) prepare written copies of motions and present them to the secretary

prior to placing them on the floor for a vote by the full board

k. maintain a close working relationship with the staff director assigned by the executive director to serve as the staff liaison with the committee

2. Members: Each committee member will assist the chair by fulfilling that committee member's responsibilities, as determined in collaboration with the committee chair.

3. Items may still be placed on committee agendas during committee meetings, but these new items should not be submitted for final action during that meeting unless they meet both of the following conditions:

a. Such items are not controversial in nature.

b. All pertinent information is available to committee members, enabling them to make an informed decision regarding those items.

## 1-2.5    TASK FORCES

Temporary working groups, established as task forces, may be formed by the president to supplement the functions of the standing committees.

A. A task force is primarily used when the board addresses an issue which does not fall within the designated responsibilities for an existing or a solitary committee.

B. The president may establish a task force and stipulate its purpose and goals.

C. All task forces expire at the end of each term of the board, and may be renewed by the president.

D. The president appoints the chair of a task force.

E. In addition to members of the board, a task force may include members of USPA staff, USPA members at large, and other parties who are knowledgeable on the issue being addressed by the task force.

F. The chair has the following specific responsibilities:

1. Chart a game plan to evaluate and fulfill the goals of the task force, according to the following criteria:

a. determination of purpose: How does this goal benefit USPA's membership and the

sport in general?

b. analysis: Is there a current USPA policy or program designated to meet this goal?

c. evaluation: What is the current status of that policy or program? Effectiveness? Track record?

d. pros and cons: What are the advantages and disadvantages of pursuing this goal?

e. Proposed course of action: What policy or program would most effectively achieve this goal?

f. financial considerations: How would USPA be financially affected by implementing this action?

g. development team: Who is most capable of developing this project through its completion?

2. Determine the number of members to serve on the task force, and select them

3. Adhere to the same operational procedures, and fulfill the same responsibilities as committee chairs.

## 1-2.6    ADMINISTRATIVE STAFF

USPA employs an executive director who, in turn, hires an administrative staff as necessary to carry out the policies of the board, the administration of USPA programs, and the daily management of USPA as a not-for-profit association and business.

A. Structure: The executive director forms, directs, and manages the administrative staff to ensure that his or her responsibilities are fulfilled in a manner consistent with the policies and programs established by the board and the resource constraints of the annual budget.

B. Procedures

1. The executive director will develop, and maintain at headquarters, internal standard operating procedures for the staff, consistent with the operating procedures of the board and the constitution and bylaws.

2. The staff procedures will also ensure compliance with all federal, state, and local regulations and adherence to basic sound business practices appropriate for a not-for-profit corporation.

C. Responsibilities

1. Executive director. The executive director is the chief staff executive of the association, and is

fully responsible to the board for the performance of the staff and for fulfilling the duties and responsibilities detailed in the executive director job description, attached as an appendix to the executive director employment contract, and has the following specific responsibilities:

a.  form, direct, and manage the USPA staff

b.  hire, support, manage, and release as required all USPA employees in compliance with federal, state, and local labor laws and sound business practices

c.  ensure timely and accurate execution of USPA programs, as directed by the president

d.  advise the board's committee chairs, as requested, and assign a staff director to serve as a liaison for each standing committee

e.  support the treasurer within the guidelines of USPA's policy documents

f.  support the secretary within the guidelines of USPA's policy documents

g.  enter into contracts on behalf of USPA, in consultation with or at the direction of the board

h.  coordinate the effort to defend all litigation directed toward the association

i.  ensure that USPA maintains the most effective portfolio of insurance policies to protect the assets of the membership and the corporation according to the policies established by the board

j.  serve as the publisher of *Parachutist* magazine

k.  serve as a spokesperson for the association, in collaboration with the president

l.  at all board meetings and general membership meetings, present a report on the status of the programs, active issues, and fiscal health of the association

m.  appoint staff to assume all regional director duties for members of foreign countries and U.S. territories (those areas not included in the USPA regional map)

n.  perform other duties as directed by the president on behalf of the board

2.  Staff: The members of the administrative staff carry out their duties as directed by the executive director.

3.  The administrative staff is responsible for ensuring that all of USPA's calendar-related activities be identified and initiated as necessary in a timely manner.

### 1-2.7   WHISTLEBLOWER POLICY

USPA is committed to honest, ethical and lawful conduct, full, fair, accurate, timely and transparent disclosure in all public communications, and compliance with applicable laws, rules and regulations. In furtherance of these commitments, USPA will abide by the rules setforth in the Whistleblower Policy found in Appendix B.

# 1-3: Election of USPA Officers

## 1-3.1 INTRODUCTION

The nomination and election of officers of USPA are conducted at the first meeting of the full board following the election of board members by the association membership. Typically, one third of the board is new and many of these new directors might have never attended a meeting. These procedures are provided to ensure that a fair and consistent method of selecting new officers is followed.

## 1-3.2 PROCEDURES

A. The election of officers will be placed on the agenda by the secretary such that it is prior to the conduct of any new business.

B. At the board meeting the outgoing president (or the most senior re-elected officer) will preside over the nomination and election process until a new president is elected. He will ensure at the outset of the proceedings that the board members and others present understand the procedures provided herein.

C. The first step in the election process is the nomination of officers. The order of nominations and elections is president, vice-president, secretary, treasurer, member at large of the Executive Committee and the chair of the board. As the nominations are made, the names will be displayed for all to see. Nominees may decline or withdraw at any time up until the start of the balloting for the office for which they are nominated.

D. Following the nominations, the president will recess the board meeting to allow sufficient open time between the nomination of officers and the balloting to allow for campaigning by nominees. However, the campaigning should not unduly delay the conduct of other business listed on the agenda.

E. When the meeting is returned to order, the president will ask if there are any further nominations; and if there are not, the nominations will be closed.

F. Following the closure of the nominations, candidates will be allotted up to five minutes to present their platforms and solicit votes. Reasonable additional time will be allowed for board members to query the nominees, if so desired.

G. The president will then close the meeting so that the balloting may begin.

H. The balloting is conducted by two senior members of the skydiving community who are not members of the board. These election commissioners are appointed to their positions by the president.
Voting is by secret, written ballot.

I. For each elected position, the candidates for that position fill out a ballot, pass it to the election commissioners, and depart the room until a winner is declared.

J. The directors discuss the nominees, close discussion, and vote on uniform, blank sheets of paper. The election commissioners sequester themselves in the room and count the ballots to assure there are as many ballots as voting board members present. If there are fewer than that, the election commissioners ask if anyone has purposely not voted. If a director says yes, the count of the ballots may continue. If not, the ballots must be destroyed and new vote taken.

K. When one candidate receives a majority vote, as described below, the election commissioners announce "Mr. (or Mde.) President, we have a winner." The election commissioners then re-admit the candidates to the room. Once the candidates are seated, the election commissioners hand a slip of paper with the name of the winner to the presiding officer for announcement. Only the name of the winner is announced, never the count.

L. When balloting has been completed and all officers have been seated, a motion is made to destroy the ballots. The election commissioners then destroy the ballots. The election commissioners must never reveal the counts.

## 1-3.3 METHOD FOR COUNTING BALLOTS

A. A majority vote (51%) is required to win. (If there is a tie, there must be a new ballot.) Where there are three or more candidates for an office and one does not receive a majority vote of all board members present, the one with the lowest vote count is removed from the ballot, he or she is invited back into the room, and a new vote is taken. If two candidates tie for low vote, neither may be removed; in this case the election commissioners announce that there is a tie (never the count) and a new vote must be taken (hoping that one or more directors will change their vote).

B. Abstentions, blank ballot, spoiled ballots, and absent director intentions (there are no proxies) are not counted.

# 1-4: REGIONAL DIRECTORS

### 1-4.1 INTRODUCTION

USPA regional directors have unique responsibilities not shared by other board members. Specifically, they have administrative duties and responsibilities to a regional constituency. They serve both as members of the board who, along with the USPA national directors, develop the policies and programs of the association, and as regional administrators of safety, training, and membership service programs.

### 1-4.2 PURPOSE

This document is provided as a guide for regional directors in the performance of duties and fulfillment of responsibilities.

### 1-4.3 RESPONSIBILITIES

Regional directors have all the responsibilities of national directors. Collectively, their duties and responsibilities are outlined in Section 1-2. In addition, regional directors have the following responsibilities:

A. Provide direct but not exclusive liaison and communication between the regional constituency and the board and with the USPA staff

B. Represent the best interests of the association with the membership and the best interests of the membership with the association

C. Approve or disapprove new and renewal applications of drop zones applying for group membership

D. Ensure continual and balanced support and communication with all USPA group members within the region, and with non-group member drop zones when in the best interest of individual members

E. Assist in the resolution of disputes between and among members (individual and group) when in the best interest of USPA

F Ensure compliance with the Basic Safety Requirements by individual and group members fairly and equitably across the region

G. Ensure group member compliance with the Group Member Pledge and take such action as may be necessary in the event of non-compliance

H. Conduct investigations in accordance with Section 1-6, as necessary

I. Appoint qualified USPA Safety & Training Advisors for drop zones, demonstration teams, or a region

J. Assist the staff with the administration of the licenses, ratings and awards programs

K. Promote skydiving, USPA and membership recruitment within the region

### 1-4.4 PROCEDURES

It is up to the discretion of the regional director to determine how best to serve the needs of his or her constituency while fulfilling obligations to the board and the association as a whole. However, certain specific procedures must be followed.

A. Safety & Training Advisors
1. The regional director appoints S&TAs and forwards the appointments to headquarters for processing.
   a. The appointments should be made in consultation with the drop zone owner-operator, while recognizing that the advisor is a representative of USPA, not the drop zone.
   b. The appointment of a DZ owner, operator or employee as the S&TA should occur only if another suitable candidate is not available.
   c. The following qualifications are required:
      (1) be a current USPA member
      (2) have made a minimum of 50 freefalls within the past 12 months*
      (3) hold at least an instructor rating*
      (4) hold a D License
      (5) be willing to endorse and promote USPA policies
      (6) attend the regional director's annual S&TA meeting*

*Items marked with an asterisk may be waived by the regional director. A letter of exception will be included with the appointment forwarded to headquarters. The regional director may appoint himself as an S&TA as long as the minimum requirements are met.*

2. The regional director will hold at least one meeting of S&TAs each year to—

    a. promote uniformity of S&TA activities

    b. enhance communications between the regional director and the S&TAs and among the S&TAs

    c. provide a forum to exchange experiences, ideas, and methods of operations

    d. inform and update S&TAs regarding USPA policies, programs, and administrative procedures

B. Awards, licenses, and ratings

1. Each regional director serves as an administrative extension of headquarters.

2. As such, regional directors are empowered to certify licenses, ratings, and awards as specified in the Skydiver's Information Manual.

C. Representation and communication

1. To be an effective regional director and to properly represent the interest of USPA and its membership, the regional director must be visibly present throughout the region.

2. While the regional director will likely have a "home" drop zone, the director must be available throughout his or her region.

3. Presence involves the use of electronic and/or conventional mail (mailing address list is available for purchase), newsletter and/or home pages, and most importantly, personal visits to drop zones within the region.

4. Regional directors may be reimbursed for travel, communications, and miscellaneous expenses as provided in Section 2-1 of this manual.

5. Email list is not available.

# 1-5: ACTION BETWEEN SEMI-ANNUAL BOARD MEETINGS

### 1-5.1  INTRODUCTION

The full board may be required to take action between regular meetings in lieu of the Executive Committee.

### 1-5.2  PURPOSE

This Section addresses ways that corporate action may be taken between the board's regular meetings by either the Executive Committee or the full board.

### 1-5.3  ACTION BETWEEN SEMI-ANNUAL BOARD MEETINGS

A. The by-laws authorize the board's Executive Committee to act for the corporation between board meetings subject to ratification by the board. Even if the by-laws would permit the Executive Committee to take an action, there may be circumstances that would be prudent for the full board to act on a matter, or at least give the matter consideration, as opposed to the Executive Committee alone.

B. A special board meeting, between the board's regular meetings, may be called in accordance with the by-laws with a reasonable number of days notice. The meeting may be held by telephonic or video screen conferencing, or with participation in that manner by some board members, as provided in the by-laws.

C. The by-laws also permit board action between regular board meetings if written or electronic consent is given by each and every board member in office. For matters that are not controversial, it may be feasible to obtain unanimous written or electronic consent without the necessity of a conference call or other meeting.

D. If there is a matter that the Executive Committee is legally authorized to approve but is reluctant to approve without input from other board members, the Executive Committee may "poll" the board members or "vet" a proposal with them before taking action. In that event, or in the event that a board vote under C is sought but not all board members respond, the Executive Committee may base action on input from at least those board members who were able and willing to respond. The Executive Committee may not take action that requires full board approval. Action taken by the Executive Committee, even after polling the board, would require subsequent board ratification.

E. New York law requires approval by the full board, rather than the Executive Committee alone, for the taking of certain actions. Such actions include: a decision by the board to submit to the members for approval any matter that under New York law must be approved by the members to be effective, filling vacancies on the board  or the Executive Committee, approving compensation for board members, amending or repealing by-laws, electing or removing officers or board members, approving a merger, plan of dissolution or disposition of substantially all assets of the corporation, or amending the certificate of incorporation.

### 1-5.4  PROCEDURES

A. Any board member or the executive director may request that a decision be made by the Executive Committee (with or without the polling of board members), or by a special meeting of the board (including a meeting by telephone or video screen conferencing).

B. The item must be submitted to the secretary in the form of a motion accompanied by supporting material.

C. The decision as to whether the motion is in order and is appropriate for action between semi-annual board meetings is the sole responsibility of the secretary who, in consultation with the president and the executive director, will consider whether the matter requires action prior to the next semi-annual board meeting, and if so, by which means: 1-5.3.A, B, or C.

D. If it is determined that the motion is in order and appropriate for action between regular  board meetings, the secretary will forward  the motion and supporting documentation to the board members. If a special board meeting is requested by the board member putting forward the motion, the persons authorized under the by-laws to call a board meeting shall decide whether to call a meeting, subject to the applicable notice requirements in the by-laws.

E.   If unanimous consent or board polling is sought, the secretary shall prepare a communication to board members containing the following:

1.   The motion proposed;

2.   A due date for the return of the ballot; and

3.   If the proposal is for a unanimous board vote or a polling of the board, appropriate space for recording votes of "yes" or "no," and, for paper balloting, a line for the board member's signature and space for the board member's comments.

F.   Hold for discussion

1.   Any board member may, upon receipt of a ballot, initiate one 20-day extension of the due date, solely for the purpose of advancing further discussion of the issue, unless the secretary, in consultation with the president and the executive director, determines that an emergency exists and that extending the due date, or extending the due date by 20 days rather than by an identified shorter period, would be imprudent.

2.   A board member may initiate such a hold by notifying the secretary, who will, in turn, promptly notify the executive director and all board members of the revised due date.

3.   It will be the sole responsibility of the board member initiating the extension to prepare and circulate documentation representing his position on the issue.

4.   If an extension has been initiated, any board member who submitted his ballot prior to the original due date will have the opportunity to change his vote by written notice to the secretary prior to the revised due date.

G.   Voting and authentication

1.   To ensure that a sender of a returned ballot is the board member voting, one of the following authentications is required:

a.   Mail and carrier service ballots must be signed in original handwriting by the voting board member.

b.   Faxed ballots must be signed by the voting board members prior to transmission.

c.   Emailed ballots must be received from the board member's email address that is on record at USPA Headquarters.

2.   Ballots will be returned to the secretary.

H.   Ballots not received by the due date cannot be assumed to be affirmative or negative votes and will not be counted.

I.   Upon determination of the vote count, the secretary will notify the board members and executive director of the tally.

1.   Results of the voting will be recorded in the minutes at the board's next scheduled meeting.

# 1-6: DISCIPLINARY ACTIONS

## 1-6.1   INTRODUCTION

In all societies, associations, fraternal orders and the like, occasionally a member of the group conducts themself in such a manner as to contravene the basic moral and ethical principles of the organization to such an extent that the well-being of the organization itself and its members are seriously jeopardized. The United States Parachute Association is certainly no exception to this rule. Because of the nature of skydiving, additional burdens are placed upon the individual participants and upon the association to constantly make every effort to police themselves and accept the responsibility which they fully recognize as theirs and which both society and government expect of them.

## 1-6.2   STRUCTURE

These procedures will be construed to provide simplicity in process, fairness in administration and the elimination of unjustifiable expense and delay.

## 1-6.3   PURPOSE

A.   This section implements the provisions of Article I, Section 6, of the by-laws. This section authorizes the board to censure, suspend, expel or otherwise discipline any member of the association for cause, including but not limited to transgressions of basic ethical principles of USPA as outlined in the USPA Constitution. It also establishes the procedures for instituting an action against a member, the minimum due process that must be accorded a member against whom such action is brought and the appellate review that is available before such action is finalized.

B.   These procedures are intended to provide for the just determination of every action brought against any member, as defined in the by-laws, Article I, Section 1.

C.   Nothing contained herein will be construed to abridge the right of any member to petition any member of the board for a redress of wrongs.

## 1-6.4   SCOPE

A.   State and federal laws make provisions for serious breaches of acceptable conduct. In cases where a USPA member is convicted of a felony, he or she may be summarily dismissed from the association in accordance with the provisions of USPA Governance Manual Section 1-1, By-Laws, Article 1, Section 6. Other offensive conduct, which may not otherwise be actionable in law but which nonetheless may result in serious injury to persons or property or which may degrade the sport, are specifically set forth herein. It is recognized that every infraction of a USPA procedure, if enforced within the literal meaning of the procedure, may yield inequitable results. USPA is not a law enforcement agency but rather an organization dedicated to encouraging safe skydiving.

B.   Any USPA member shall be guilty of an offense justifying the imposition of the penalties set forth in USPA Governance Manual Section 1-6.4.C (below) who—

1.   Willfully, flagrantly or continuously violates the USPA Basic Safety Requirements.

2.   Aids and abets a willful violation of the USPA Basic Safety Requirements.

3.   Is so grossly negligent in conduct or acts as to imminently imperil fellow skydivers or aircraft, persons or property on the ground, or wantonly disregards personal safety or the safety of others.

4.   Engages in any conduct as a skydiver that a person of reasonable prudence would anticipate as being likely to bring public contempt upon their person, upon skydivers or upon USPA.

5.   Engages in any conduct that reasonably jeopardizes the well-being of USPA.

6.   Willfully falsifies any document, certificate or record connected with or relating to skydiving.

7.   Willfully and knowingly misrepresents any material fact in connection with any application filed with USPA.

8.   As the owner or controlling manager of a Group Member drop zone, willfully or flagrantly violates the terms of the Group Member Pledge.

9.   Has a duty of confidentiality and breaches that duty.

C.   Penalties: Any USPA member who has been found to have committed one or more of the offenses specified in USPA Governance Manual Section 1-6.4.B (above) shall be subject to one or more of the following:

1.   Membership suspension or revocation.

2.   License suspension or revocation.

3.   Rating suspension or revocation.

4.   With the above-listed penalties, conditions may be specified upon which membership, licenses and ratings may be restored.

5. Censure.

D. Resignation/Surrender

1. Any USPA member who resigns their USPA membership will not be eligible for USPA membership for a period of one year without full board approval.

2. Any USPA rating holder who surrenders any USPA rating will not be eligible to hold that rating for a period of one year, must receive full board approval to regain that rating and must comply with all currency requirements.

3. A member who resigns may still be subject to disciplinary actions from USPA for acts committed prior to the resignation or surrender.

E. Jurisdiction

1. Primary jurisdiction: The regional director of the region in which the alleged offense was committed shall have primary jurisdiction over the disciplinary action.

2. Concurrent jurisdiction: In the event that a member of one jurisdiction is alleged to have committed an offense in another region, the regional director of the region where the member resides and the regional director where the alleged offense occurred will have concurrent jurisdiction over the matter.

3. In the event any USPA official is unable to carry out the duties specified in this section, the president or next-ranking USPA officer will designate an appropriate person to act on behalf of the official.

F. Non-Members

1. In the event a disciplinary action investigation reveals that the person in question is not a member of USPA due to membership expiration or surrender, the investigative process may continue.

2. If it is determined that a suspension or revocation of a USPA credential would normally be warranted, the person will be notified of the decision of the Compliance Group, and a notation will be entered into the person's database file or a new database file will be created for that person.

3. Any future requests of the person to renew USPA credentials must be approved by the Executive Committee following a review of the details. If the Executive Committee denies the request, it will then be brought to the full board for a review. Since it is not possible for USPA to

revoke the membership and ratings of a non-current member, the board would need to examine the situation to determine if it would be deemed reasonable to allow the expired member to renew membership and ratings (if applicable).

**1-6.5   PROCEDURES**

The procedures contained in this section will apply to all USPA members.

A. Compliance Group (CG)

1. The CG will be formed of the following members, each of whom is expected to fully participate in all deliberations:
   a. The director of safety and training.
   b. The relevant regional director(s).
   c. A national director, not on the Executive Committee, appointed by the president.
   d. The chairman of the Group Membership Committee.
   e. The chairman of the Safety and Training Committee, who shall act as the CG chairman.

2. In the event that any USPA official is unable to carry out their duties or the regional director is the same as another appointed CG member, the president will appoint a replacement board member to act on the behalf of the official.

3. Each appointed director serves for the full term of the board, unless the appointee resigns his position on the CG.

4. The president may remove any board of director CG member only with the approval of the board of directors by a two-thirds vote, including the removal from the CG of the chairman of the Safety and Training Committee or Group Membership Committee by changing the chair of either or both of those committees.

5. In cases where the investigating regional director or member of the CG is also a member of the Executive Committee, that person will participate with the CG but must abstain from any Executive Committee vote regarding a CG decision.

B. Instituting a Disciplinary Action

1. When any matter involving the conduct of a USPA member comes to the attention of any staff member or board member, that person will notify the director of safety and training, who will notify the regional director and the CG in writing.

2. All staff members and board members involved

Case 2:20-cv-01392-KJM-CKD   Document 1   Filed 07/08/20   Page 41 of 101

in a disciplinary process will protect the anonymity of a complaining party if so requested by that party. However, the complaining party must provide their name and contact information to the CG along with any allegation.

3.  In order to protect against abusing a member with a submission of false, incomplete or misleading allegations, evidence of a violation must be substantial enough for the CG to begin an investigation.

    a.  Physical evidence such as video, photographic or written documentation is preferred.

    b.  Written reports should be provided by eyewitnesses whenever possible.

    c.  Investigator interviews of persons having information and/or knowledge related to the allegation should be documented in a detailed report with specific dates and the details of each allegation.

    d.  In cases where the names must be redacted from any report provided to the investigating regional director, the USPA licenses and ratings held by any witness or complainant must be provided with any verbal or written statements.

    e.  The USPA Board and staff will keep all personal information for any complainant or witness confidential. The names and contact information will not be provided to the complaining party under any circumstance.

    f.  Anonymous reports that are submitted with no supporting evidence or contact information will in most cases not be considered for any action by the regional director or CG.

4.  The regional director will then investigate and collect sufficient facts to determine whether there is a prima facie showing of an offense as specified in Section 1-6.4.B. The regional director will present his gathered facts, findings and prima facie conclusion to the CG by conference call.

5.  If, after the preliminary investigation, the CG concludes that prima facie evidence is insufficient for an investigation, the CG will dismiss the allegation, and the regional director will notify the complainant and the member in writing.

C.  Notice of Investigation: If, after the preliminary investigation, the CG concludes that the regional director has sufficient facts for a prima facie showing

that a member has committed an offense as specified in Section 1-6.4.B, the regional director (or at the regional director's request, an appointed investigator) will serve upon that member a Notice of Investigation that will contain all the following particulars:

1.  A citation of the authority upon which the action is being taken (USPA Governance Manual Section 1-1, Constitution and By-Laws, Article 1, Section 6; and Section 1-6, Disciplinary Actions).

2.  Reference to the Basic Safety Requirement, Group Member Pledge or other rule (including state and federal laws), or in the case of ethical principles, the principle involved.

3.  A specification of one or more of the alleged offenses, as listed in Section 1-6.4.B.

4.  Sufficient facts to support the alleged violation.

5.  An appropriate statement advising the member of their right to offer, orally or in writing, any statement or evidence in defense or as grounds for mitigation; and their right to an informal hearing before the regional director and a hearing before the CG, providing timely requests for such hearing are made.

D.  Service of Notification

1.  The Notice of Investigation will be sent to the member against whom an action is being instituted by first-class mail, as well as certified mail with return receipt to the address that the member has on file with USPA, and to any other address of which USPA is aware.

2.  An electronic mail will be sent to the email address, if any, that is on file with USPA, and the member will be telephoned at the number on file with USPA, if any, by the regional director or other assigned investigator, or will be notified in person verbally.

3.  The member will be considered notified when there is proof of delivery of the certified mail, when the member responds to the electronic mail notification, when the regional director or assigned investigator notifies the member by telephone verbally or in person verbally, 14 days from the date of the mailing of the certified letter or whichever occurs first.

4.  In extraordinary circumstances where the member could not be notified, the member may appeal immediately to the CG to restart the disciplinary action from the beginning.

E.   Hearings and Evidence

1.   Within 15 days of the receipt of a Notice of Investigation, the member may contact the regional director and present any relevant evidence and testimony. The contact may be by telephone, other electronic means or in person. The member may also present evidence to the regional director by mail, email or other acceptable means. At the discretion of the regional director, the timeframe may be changed to a period not to exceed 30 days, to allow the member more time for preparation.

2.   Within 15 days of the receipt of a Notice of Investigation, plus any extension granted by the regional director, the member may request a hearing with the CG by making a written request by mail or email to the director of safety and training. The CG will participate by conference call, where the member may present relevant written and oral evidence and may make oral arguments in defense or mitigation. The member forfeits the right for a hearing before the CG if a timely request is not made.

3.   The member is allowed one counselor at any hearing (including any appeal), but the member is expected to converse directly with USPA representatives.

4.   Since USPA cannot compel the attendance of witnesses or the taking of evidence, there will be no right of confrontation as such. However, every effort will be made to determine the facts fairly and impartially.

5.   The member is not required to participate in any hearing or provide evidence or testimony to the regional director, the CG or any USPA official, and it is entirely the member's option to do so.

6.   In extraordinary circumstances or for compelling reasons, the member may appeal to the CG to extend any deadlines.

F.   Presumption

1.   Any member against whom a disciplinary action has been instituted is presumed to be innocent of the charge. This presumption remains until the member is found, in accordance with the procedures outlined herein, to have committed an offense specified in Section 1-6.4.B.

2.   To protect a member who is wrongly accused and to protect the rights of all persons affected, members of the board of directors and USPA staff will refrain from discussing any matter relating to any alleged offense with any person not a party to the action and shall express no

opinion nor make any statement concerning anything related to the alleged offense except as provided in Section 1-6. Any breach of confidentiality may be subject to disciplinary action under Section 1-6.4 B.9.

3.   Any member who has received a Notice of Investigation will be ineligible to apply for or receive any new licenses or ratings until the final disposition of the disciplinary action.

G.   Proof of Fact: The proof of facts sufficient to justify a finding that an offense, as specified in Governance Manual Section 1-6.4.B, has been committed shall be by a preponderance of evidence as in other civil matters and not beyond a reasonable doubt and to a moral certainty, as in criminal matters.

H.   Deliberation and Determination: Upon receipt of a regional director's final report, conclusion of all hearings and receipt of any response or other evidence from the member, the CG will have a final deliberation. All decisions by the CG must be unanimous. If the CG cannot make a unanimous decision, then the action against the member must be dismissed. The final decision of the CG must be made within 45 days, plus any granted extensions, of the date of the letter of Notification of Investigation to the member. The CG will make one of the following determinations:

1.   Dismissed Action: If the CG dismisses the action for any reason, the director of safety and training will notify the member in writing.

2.   Disciplinary Action

a.   Upon the CG finding that a disciplinary action is warranted and assessing a penalty, the CG will at the same time determine whether any penalties or conditions imposed will be in effect during any appeal of the member to the Executive Committee. Penalties are normally held in abeyance during any appeal. However, in cases of egregious circumstances or where public safety is jeopardized, the CG may specify that the penalty be in effect during the appeal process.

b.   The director of safety and training will make notification to the member using the procedures in Section 1.6.5.D. The notification will include the offense, the penalty, any conditions imposed, the appeal process available and the pertinent sections of the Governance Manual.

c.   Within three business days of the final decision of the CG, the CG will notify the EC in writing of the disciplinary action taken.

d. Any membership or rating suspension or revocation will be noted in the database record of the member in order for the status to display in the USPA online credential verification page, and a notification will be sent to all USPA Group Member drop zones to provide only the name and membership number of the member and the status of the membership and ratings for that member. In the event of a member's timely appeal of the CG decision, such notifications will be removed, unless the CG had determined that the penalties would be in effect during any appeal to the Executive Committee of the CG decision.

I. Appeal of CG Disciplinary Action

1. The member may appeal an adverse decision of the CG to the Executive Committee by notifying the director of safety and training, in writing, that an appeal of the CG decision or penalty is being made. Such appeal must be made within 15 days of the notification to the member of the final disciplinary decision of the CG.

2. If a timely appeal of the decision is made to the CG, the CG will within three business days forward to the Executive Committee the evidence in the case and any other pertinent information and respond to any Executive Committee inquiries.

3. The member may provide written statements or evidence, testify and may have one counselor available during testimony by conference call with the Executive Committee. However, the member is expected to converse directly with USPA representatives. The Executive Committee must make its final decision within 15 days of receiving the member's appeal from the CG, unless the Executive Committee, by majority vote, extends the deadline.

4. By majority vote, the Executive Committee may uphold, dismiss or modify the CG decision on both guilt and penalty but may not impose a harsher penalty than the original penalty imposed by the CG decision. The EC will at the same time, by majority vote, determine whether any penalties or conditions imposed will be in effect during any appeal of the member to the full board. Penalties are normally held in abeyance during any appeal. However, in cases of egregious circumstances or where public safety is jeopardized, the Executive Committee may specify that the penalty be in effect during the appeal process.

5. The USPA Secretary will make notification to the member, using the procedures in Section 1.6.5.D. The notification to the member will include the offense, the penalty, any conditions imposed, the appeal process available and the pertinent sections of the Governance Manual.

6. Any membership or rating suspension or revocation will be noted in the database record of the member in order for the status to display in the USPA online credential verification page, and a notification will be sent to all USPA Group Member drop zones to provide only the name and membership number of the member and the status of the membership, license and ratings for that member. In the event of a member's timely appeal of the Executive Committee decision, such notifications will be removed, unless the Executive Committee had notified the member that the penalties would be in effect during any appeal of the Executive Committee decision to the full board of directors.

J. Appeal of Executive Committee Disciplinary Decision

1. The member may appeal an adverse decision of the Executive Committee to the full board of directors by notifying the USPA Secretary in writing within 15 days of the member's notification of the Executive Committee's final disciplinary decision.

2. The USPA Secretary will place the appeal on the agenda of the next board meeting. At that meeting, the Executive Committee will provide all documentation and evidence to the full board. The full board will hear the appeal and may, by majority vote, uphold, dismiss or modify the decision of the Executive Committee but may not impose a harsher penalty than was imposed by the Executive Committee decision.

K. Relief of Suspension or Revocation: Any current or former member who has had membership, licenses, ratings or awards suspended or revoked may petition the full board at a board of directors meeting after the appeal process has expired or as required by the final disposition of the action against the member by contacting the USPA Secretary to set the matter on the agenda.

**1-6.6    SUMMARY AUTHORITY OF USPA OFFICIALS**

A    Regional Director

1.    The regional director is empowered to suspend ratings for a period not to exceed 60 days upon a finding that a member who holds such a rating is not currently qualified or has violated any safety rule or principle relating to the exercise of the privilege of the rating.

2.    The regional director is empowered to suspend individual membership for a period not to exceed 60 days upon finding that a member has violated a safety rule that warrants an immediate suspension pending additional investigation. The action of the regional director will be subject to review by the CG upon the member notifying the director of safety and training, in writing, within 15 days of the notification of the initial suspension.

3.    The regional director is empowered to suspend a Group Member by written notice, with explanation, for a period not to exceed 60 days upon a finding that the Group Member has materially violated the Group Member Pledge. The Group Member may request the CG review the action of the regional director by notifying, in writing, the director of safety and training within 30 days of the notification of the initial suspension.

4.    In unusual circumstances where common sense and good judgment demand immediate action, the regional director will by all lawful means take whatever action is appropriate.

5.    When possible, the regional director will discuss the intended action with the president before taking the action and in all instances will immediately notify the president and executive director of the full particulars. In doubtful cases, the regional director will consult with the USPA legal counsel and may solicit the assistance of the FAA or any law enforcement agency.

6.    The regional director may request an independent investigator, approved by the president, to investigate a possible disciplinary action under this section.

7.    The regional director will notify the CG of any alleged offense that may warrant a disciplinary action, and actions taken by the regional director under summary authority do not preclude any subsequent disciplinary action.

B.    Safety and Training Advisor and/or Instructor Examiner

1.    A Safety and Training Advisor and/or Instructor Examiner who holds a current rating has the authority to suspend the same rating for a period not to exceed 30 days upon finding that the member who holds such a rating is not currently qualified or has violated a safety requirement or principle relating to the exercise of the rating.

2.    A Safety and Training Advisor and/or Instructor Examiner is empowered to suspend individual membership for a period not to exceed 30 days upon finding that a member has violated a safety rule that warrants an immediate suspension.

3.    The action of the Safety and Training Advisor and/or Instructor Examiner will be subject to review by the regional director, providing a timely request is made by the member who received the adverse action.

4.    When possible, the Safety and Training Advisor and/or Instructor Examiner will discuss the intended action with the regional director before taking the action and in all instances will immediately notify the regional director of the full particulars.

5.    The regional director will notify the CG of any summary authority action by any Safety and Training Advisor and/or Instructor Examiner in the region and any offenses that may warrant disciplinary action. Actions taken by a Safety and Training Advisor and/or Instructor Examiner under summary authority do not preclude any subsequent disciplinary action.

C.    Limitation of Actions

1.    A disciplinary action against any member will be instituted within one year of the date on which the offense was committed. Prior offenses that occurred within the previous two years of the offense may be considered for discipline as long as the nature of the offenses are the same or similar to the offense that occurred within the one-year limitation.

2.    In the event of an incident resulting in a fatality or serious injury, the disciplinary action will be initiated within three years.

3.    Disciplinary action is considered instituted from the time a Notice of Investigation is sent to the member.



Case 2:20-cv-01392-KJM-CKD   Document 1   Filed 07/08/20   Page 46 of 101

# 1-7: GOVERNANCE COMMITTEE

## 1-7.1 INTRODUCTION

A. The United States Parachute Association is a membership corporation established under the laws of the state of New York. The corporation is authorized to promulgate by-laws and other rules necessary to implement the fundamental purposes set forth in its certificate of incorporation, which are not inconsistent with the enabling laws of New York.

B. The Governance Committee of the board is established as a standing committee by USPA Governance Manual Section 1-1, Constitution and By-Laws, Article VIII, Section 2. This section outlines the scope, function, and responsibilities of the committee. It is recognized that these may fluctuate from time to time and Section 1-7 will be amended accordingly. The main purpose of this document is to establish and publish uniform procedures to be followed by the committee.

## 1-7.2 PURPOSE OF THE COMMITTEE

A. The responsibility of the Governance Committee will be to ensure that the By-Laws and other rules of USPA carry out the objectives of the corporation in accordance with the certificate and law.

B. The committee keeps the certificate of incorporation, by-laws, and regulations up to date, maintains the Governance Manual, and monitors the publication of all corporate regulations and publications.

C. The committee is charged with the responsibility of presenting to the members candidates that meet the requirements set forth in the Elections Section.

## 1-7.3 STRUCTURE

The chairman is the focal point for all committee business, delegates responsibilities to the other committee members, and collates all applicable materials to be presented to the president and board for approval or other disposition. The committee will be composed of no less than three current board members. A minimum of three committee members will participate during any deliberation.

## 1-7.4 FUNCTIONS OF THE COMMITTEE

It will be the function of the Governance Committee to—

A. Coordinate amendments, changes, restatement, and updating of the by-laws

B. Evaluate resolutions to determine whether they are proper subject matter to be incorporated into the by-laws

C. Coordinate with the secretary to ensure that other resolutions are relegated to the proper parts

D. Review and offer suggestions to update the overall structure of the regulations that govern the conduct of business

E. Review all governing documents and resolutions of the corporation to determine their consistency with laws, certificate of incorporation, and the by-laws

F. Recommend to the president any administrative changes necessary to carry out the functions of the corporation

G. Recommend to the board any amendments to the by-laws or other regulations necessary to carry out the functions of the corporation

H. Recommend amendments to the certificate of incorporation, should such be warranted

I. Republish the by-laws periodically to reflect changes made by the board and the membership

J. Seek out well-qualified candidates from among all members of the parachuting community and to invite and encourage them to participate in the governing of USPA by becoming candidates for election to the board

## 1-7.5 COMMITTEE PROCEDURE

Board meetings may be interrupted for the purpose of permitting the various committees of the board to convene. For simplicity and uniformity, the following committee procedures are recommended:

A. Previous work of the committee should be reviewed.

B. Recommendations to the board or president should be formulated.

C.   A member of the committee should be designated by the committee chair to draft any recommended resolutions or other documents, if these have not been previously prepared.

D.   Proposed drafts of resolutions or other documents should be acted upon by the committee and those approved should be submitted subsequently to the board or other appropriate authority.

E.   New matters to come before the committee should be considered.

F.   Projects for further research should be assigned to committee members or other interested parties.

## 1-7.6   RESPONSIBILITIES

The chair of the Governance Committee will be responsible for:

A.   Presiding over all meetings of the committee

B.   Ensuring that all assigned functions of the committee are satisfied

C.   Directing the attention of the committee in identifying current problem areas within the jurisdiction of the committee

D.   Establishing projects to correct deficiencies and assigning specific duties to committee members

E.   Submitting progress reports, advisory memoranda, and all other appropriate documents to the proper authority

F.   Serving as technical advisor to the president and board on all matters within the jurisdiction of the committee which will include but are not limited to:
   1.   The applicable state and federal law
   2.   Certificate of incorporation, by-laws, and other regulations of the corporation
   3.   Administrative procedure

# 1-8: USPA Executive Committee

### 1.8.1   INTRODUCTION

The Executive Committee of the board is established as a standing committee by Governance Manual Section 1-1, Constitution and By-Laws, Article VIII, Section 1.

### 1-8.2   PURPOSE

The primary purpose of the Executive Committee is to conduct association business and make policy decisions when the full board is not in session.

### 1-8.3   STRUCTURE

The Executive Committee is a special committee elected by the board which is composed of six members of the board, including the USPA chairman of the board, president, vice president, treasurer, secretary, and one member-at-large.

A.   The Executive Committee is authorized by the board to serve in this capacity, subject to board approval for each decision made as an interim action.

B.   All members of the Executive Committee have the right to vote on all Executive Committee decisions.

### 1-8.4   FUNCTIONS OF THE USPA EXECUTIVE COMMITTEE

The Executive Committee

A.   Conducts association business and make policy decisions through interim actions when the full board is not in session

B.   Through the president, supervises the executive director by providing clear direction according to the method of governance deemed most appropriate by the current board

C.   During the interim periods between board meetings, receives, evaluates, and considers suggestions and requests from board members, committee chairs, staff members, general members, and other individuals on matters pertaining to USPA policy and procedures

D.   Submits all interim actions conducted by the Executive Committee to the full board for its consideration and vote of approval or disapproval

E.   Determines membership eligibility, conducts disciplinary actions, and reviews appeals of disciplinary actions for individual and group members, per Article 1, Section 6.A of the Constitution and By-Laws

F.   Administers the AAD Fund in conjunction with the senior staff director responsible for government relations

G.   Conducts interim meetings, conference calls, and other pertinent correspondence among committee members between board meetings as necessary to fulfill the committee's responsibilities

H.   Calls for USPA General Membership meetings and board meetings, as appropriate

I.   Authorizes financial expenditures according to USPA's financial policy documents

J.   Reviews, approves, or disapproves waiver requests to the BSRs as appropriate

### 1-8.5   PROCEDURES

A.   Interim Meetings
1.   The chair may call for interim meetings of the Executive Committee a reasonable number of days prior to the start of the meeting.
2.   The chair will distribute an agenda to the full board and executive director a reasonable number of days prior to the start of the meeting or with the meeting call, to which all Executive Committee members, committee chairs, board members, and administrative staff members may submit additional agenda topics.

B.   Interim Actions
1.   Issues addressed during the interim periods between board meetings should be time-sensitive in nature, and ones which would be impractical to address at the next scheduled full board meeting.
2.   Whenever possible, committee members should be given the opportunity to discuss the merits of each issue among themselves, with administrative staff, and with other individuals concerned with or relevant to the issue.

C.   Voting Procedures: When an issue being addressed by the Executive Committee requires a formal decision or approval, one of the following means of voting will be used:
1.   During interim meetings, votes are called for and given verbally, or by a show of hands.
2.   When committee members are in separate locations, the chair may choose to conduct a verbal or a written vote. A written vote taken

without a meeting of the Executive Committee shall require the approval of all members of the Executive Committee in office.

3. Verbal votes may take place by means of individual or group correspondence using telephone or video screen conferencing at a meeting at which all committee members attending the meeting can simultaneously hear each other.

4. In the case of a written vote:
   a. A printed explanation of the issue, including supportive evidence where applicable, will be distributed to committee members and the executive director.
   b. The chair will establish a deadline, by which time all committee members should conclude their evaluations of the issue and submit a written vote to the chair, with a date and signature.
   c. Email is an accepted means of voting if the email sets forth, or is submitted with, information from which it can reasonably be determined that the transmission was authorized by that Executive Committee member. Each committee member's e-mail should state that the committee member intends transmission of the e-mail to be the committee member's signature, but failure to say so shall not invalidate a committee member's vote if transmission of the e-mail was intended as the committee member's signature.

## 1-8.6    RESPONSIBILITIES

A. Committee Chair (President)
   1. Sets the agenda and chairs all Executive Committee meetings
   2. Distributes the agenda for Executive Committee meetings to the full board and headquarters 30 days prior to the start of the meeting—with the exception of emergency or other short-notice meetings
   3. Represents the committee when presenting actions proposed by the committee
   4. Copies committee-related correspondence to, and reviews committee-related issues with Executive Committee members and the executive director
   5. Consolidates committee deliberations and develops related proposals as appropriate
   6. Writes reports on interim actions of the Executive Committee, and presents them to the board and staff
   7. Delegate duties of committee chair to other members of the Executive Committee when practical

B. Chairman of the Board
   1. Serves as Wise Counsel to the Executive Committee
   2. Offers pertinent background and historical information on topics being addressed by the committee whenever possible
   3. Fully participates in all Executive Committee deliberations

C. Vice President
   1. Serves as a confidante, objective third party, and second set of eyes for the committee chair
   2. Fulfills the duties of the committee chair if the president is not available to fulfill these functions
   3. Fully participates in all Executive Committee deliberations

D. Treasurer
   1. Evaluates the financial impact of all interim actions being considered by the Executive Committee and provides informed conclusions and recommendations to Executive Committee members
   2. Reviews each request from board members for financial expenditure which is not specifically designated in the budget and recommends for approval or denial of that request to Executive Committee members
   3. Fully participate in all Executive Committee deliberations

E. Secretary
   1. Reviews each interim action being considered by the Executive Committee, and provides committee members with relevant information concerning how this action could affect existing association policies and how existing policies could affect the proposals being considered
   2. Ensures that accurate records of all interim Executive Committee meetings are recorded, printed, and provided to the committee chair and the executive director
   3. Fully participates in all Executive Committee deliberations

F. Member-at-Large
   1. Serves as an objective liaison between the full board and the officers of the association
   2. Seeks input from board members on topics being addressed by the Executive Committee
   3. Fully participates in all Executive Committee deliberations

# Section 2

## FINANCE



**United States Parachute Association®**
Copyright © 2019 by USPA

# 2-1: FINANCIAL LIMITATIONS AND PROCEDURES

## 2-1.1    INTRODUCTION

The USPA is a not-for-profit corporation whose financial operations are governed by its Articles of Incorporation; USPA Governance Manual Section 1-1, Constitution and By-Laws; and applicable federal, state, and local regulations.

## 2-1.2    STRUCTURE

A.  The association adheres to regulations which apply to both a small business and a corporation determined by the Internal Revenue Service to be tax-exempt by Section 501(c)(4) of the Tax Code.

  1.  This section provides guidelines for budgeting, accounting, and reporting, and it assigns responsibilities for each between and among the USPA Board of Directors and the administrative staff.

  2.  All board members, officers, staff members, other representatives, and committees will operate in accordance with the policies set forth in this section.

B.  The fiscal year for the association is the same as the calendar year.

## 2-1.3    BUDGETING PROCEDURES AND RESPONSIBILITIES

A.  The budget is the announced and approved guide for appropriating the available income and is the limitation of funds to be expended unless modified by the board.

B.  The executive director prepares USPA's draft annual budget for the association, based upon

  1.  the projected administrative and operational requirements of headquarters

  2.  the existing and projected association programs articulated by the committee chairs and approved by the board

C.  To the extent possible and practical, the budget will be organized to reflect both the departmental structure of the association (e.g., membership services, competition, etc.) which parallels and supports the committee system of the board and the expense-category structure of the accounting system (e.g., compensation, travel, etc.).

D.  The draft annual budget will be submitted to the chair of the Finance and Budget Committee no later than November 15 of the year preceding the new budget year.

E.  Once approved by the Finance & Budget Committee, the draft annual budget is provided to the treasurer.

  1.  The treasurer will present the draft annual budget not later than December 15 to the Executive Committee for interim approval to cover the period between the beginning of the fiscal year and the first board meeting.

  2.  The board as a whole will act upon the budget at the first meeting of the fiscal year.

F.  If interim approval is not obtained by the beginning of the new fiscal year:

  1.  The association will operate under a continuing resolution by the Executive Committee until the board approves the budget at its next scheduled meeting.

  2.  This resolution will restrict expenditures to the same levels of the previous year.

G.  The total of all projected expenses within each budget department should be considered as the overall spending limit for that department.

  1.  While some adjustments within budget departments can be expected during a fiscal year, the overall ceiling for each department may only be exceeded with the approval of the board or the Executive Committee on its behalf.

  2.  The executive director is responsible for ensuring that overall staff expenditures are not exceeded without board approval; however, the executive director may make adjustments within the overall staff budget as necessary to ensure the efficient and effective operation of headquarters.

H.  Any budget item may be placed on the agenda at the next scheduled meeting of the board at the request of any USPA director.

## 2-1.4    ACCOUNTING PROCEDURES AND RESPONSIBILITIES

A.  The association's accounting system is an extension of the budgeting process.

1. It depicts the realization of revenues and expenses compared to those predicted in the budget.
2. It includes the necessary reporting required by proper accounting procedures and applicable regulations.

B. The executive director is responsible for establishing and maintaining an association accounting system which is in accordance with the accounting procedures established by the Financial Accounting Standards Board. The system will be—
1. Approved by the Finance & Budget Committee
2. Overseen by the treasurer
3. Subject to the review by the Executive Committee and the board

C. The executive director, on behalf of the treasurer, is responsible for receiving and disbursing all funds of the association.
1. The executive director or his or her designated representative will receive all deposits into the association's accounts and may make all payments specifically provided for in the approved budget.
2. The treasurer is responsible for providing the oversight of these procedures.

### 2-1.5  REPORTING PROCEDURES AND RESPONSIBILITIES

A. Monthly, the executive director will provide the board with financial statements of revenue/expenses and assets/liabilities.

B. The executive director will prepare an annual financial report and make it available to the general membership.

C. The treasurer will prepare a financial report twice yearly to present to the directors at the board meetings. The treasurer may delegate this task, but not the responsibility, to the executive director.

D. Audits
1. The Finance & Budget Committee is the audit committee.
2. An audit of the financial status of the Association will be conducted annually.
3. The audit will be conducted by an independent accounting firm selected and retained by the Finance & Budget Committee. Results of the audit will be reviewed by the Finance & Budget Committee and presented to the full board for approval.
4. A special audit can be requested at any time by

the Treasurer, the Executive Director or the Finance & Budget Committee, and the request will be presented to the Executive Committee for action.

E. The executive director will ensure that all required local, state, and federal reports are properly prepared and timely filed.

F. In accordance with federal law, a copy of the IRS Form 990 and the Tax Exemption Declaration will be available at the reception office of the association for public inspection.

G. The executive director will ensure that sufficient internal controls are in place to prevent fraud, waste, or abuse.

H. Special financial reports will be submitted to the executive director and the board as required or directed by the president, treasurer, Executive Committee, or board.

### 2-1.6  INVESTMENT PROCEDURES AND RESPONSIBILITIES

The executive director, on behalf of the treasurer, is responsible for the management of the association's investment accounts.

A. Such management will be consistent with the overall association investment strategy which will be reviewed at least annually by the Finance & Budget Committee and whose execution will be overseen by the treasurer.

B. The executive director, in consultation with the treasurer, will ensure that an operational reserve of liquid assets is available for emergencies.

C. Liquidation in part or total of the operational reserve accounts requires approval of the board.

D. The executive director, with the concurrence of the treasurer, may select and retain investment managers, as required.

### 2-1.7  FINANCIAL LIMITATIONS AND GUIDELINES

To ensure that the fiduciary responsibilities of the board, officers of the association, and the administrative staff are properly fulfilled while also not abused, the following limitations and guidelines are set forth:

A. Emergency Expenditures: In emergencies when it is impractical to seek consent of the board, the Executive Committee may obligate the association for an amount not to exceed $30,000 for non-budgeted items.

B. Executive Director Authorization: The executive director is authorized to make disbursements of funds in amounts not to exceed $10,000 per transaction.

1. The treasurer has specific authority to prohibit the executive director from making any payment within the executive director's $10,000 limit.

2. In any case of an expenditure item upon which the treasurer and the executive director disagree, the matter will be presented to the Executive Committee for resolution.

3. The executive director must have written approval by the Executive Committee for items that exceed $10,000, unless that expense is budgeted.

C. Treasurer Limitations: The treasurer has no authority to obligate the organization for non-budgeted expenditures in excess of $500 annually except when acting as a member of the Executive Committee. The treasurer must notify the executive director of all approved expenditures to ensure accountability.

D. Exceeding Limits

1. Exceeding the financial limits or obligating the association without authority may make that person liable for the obligation and subject to disciplinary action.

2. Irregularities in the handling of finances are grounds for removal from employment, office, or the board.

## 2-1.8    BUSINESS AND TRAVEL EXPENSES

A. Employee Expenses:

1. Business expenses incurred by association employees will be reimbursed by the executive director in accordance with the association's employee manual and within the limitations and guidelines of the budget.

2. Reimbursable expenses may include transportation, lodging, per diem, parking and reasonable tips.

3. All staff travel on behalf of the association will be at the direction of the executive director.

4. The executive director will inform the president of all executive director travel in advance.

B. Board Member Expenses

1. While board members are not employees of the association, they may incur expenses in the exercise of their official duties that warrant reimbursement.

2. The type of service performed and the funds available to the association suggest the extent of the reimbursement.

3. In all cases the expenditures must be specifically provided for in the budget unless otherwise approved by the board.

4. Specific guidelines are as follows:

    a. For board meetings, the association may reimburse board members for round trip travel, per diem, and lodging; all other travel related expenses will be borne by the board member who incurs them.

    b. Regional directors may be reimbursed up to $1,000 per year for travel or other official USPA expenses necessary to perform duties for and within their respective regions.

    c. All board members will receive twice yearly a payment of $60 for communications expenses.

    d. All other board member travel will follow the same reimbursement guidelines as employee travel.

    e. To qualify for reimbursement, all board member travel, excluding travel to and from board meetings, must be approved in advance by the Executive Committee and provided for in the budget.

    f. For the claimant to qualify for reimbursement, all reimbursement claims for business and travel expenses must be received at headquarters within 90 days of the date the expenses.

C. Travel Reimbursement Limits

1. In all cases of travel by board members or employees, reimbursement will be no greater than economy class air travel, regardless of mode of travel.

2. Unless otherwise approved by the Executive Committee, reimbursement for economy class travel will be based upon advance purchase ticketing rates.

# 2-2: Finance & Budget Committee

## 2-2.1 BACKGROUND

The Finance & Budget Committee of the board is a standing committee of the Association as created by Governance Manual Section 1-1, Constitution and By-Laws, By-Laws Article VIII—Committees, Section 2: Standing Committees. This section outlines the purpose, function, structure, procedures, and responsibilities of this committee.

## 2-2.2 PURPOSE

A.  Represent the association's members in the management of the financial affairs of their association.

B.  Ensure that the financial affairs of the association are conducted in accordance with proper business practices and applicable state and federal laws and regulations.

## 2-2.3 FUNCTION

The Finance & Budget Committee

A.  Develops, maintains and amends as necessary Governance Manual Section 2-1: Financial Limitations and Procedures

B.  Follows procedures as outlined in Governance Manual Section 2-1: Financial Limitations and Procedures, with regard to budgeting, accounting, and reporting functions

C.  Provides input to other committees with regard to financial implications of existing or proposed USPA programs

D.  Advises the board on matters both internal or external that may affect the immediate and long-term financial health of the association

## 2-2.4 STRUCTURE

The Finance & Budget Committee consists of not less than three nor more than five members, all of whom are board members in good standing of the association. One of these members must be the treasurer of the association. The president and executive director are *ex-officio* members of the committee.

## 2-2.5 PROCEDURES

A.  The Finance & Budget Committee meets during each regular meeting of the board, and the agenda will follow the following general format:
    1.  Old business
    2.  New business
    3.  Project assignment
    4.  Committee report and actions.

B.  The committee may conduct business between regular board meetings by in-person meetings, conference telephone calls, mail, fax, or e-mail, as circumstances require.

## 2-2.6 RESPONSIBILITIES

A.  The Finance & Budget Committee Chair
    1.  Is responsible for ensuring that the functions of the Finance & Budget Committee are satisfied
    2.  Leads the committee in identifying projects, tasks, and problems within the committee's area of responsibility
    3.  Leads and coordinates committee projects and assigns specific tasks to committee members
    4.  Acts as the focal point for all projects, receives recommendations, informs committee members of progress, consolidates contributions of the committee, and reports committee findings
    5.  Receives from the president and executive director comments, inquiries, recommendations, and instructions regarding matters which require committee action or that concern committee projects, tasks or areas of responsibility
    6.  Provides information to the president and executive director regarding committee projects and tasks as may be necessary between board meetings
    7.  Prepares the agenda for committee meetings
    8.  Chairs all committee meetings and presents committee reports to the board
    9.  Ensures that the president, executive director, and the board are informed of the committee's activities
    10. Acts at all times in the best interests of the long-term financial health and goals of USPA

B.    The Finance & Budget Committee members:

1.    Assist the committee chair in identifying and proposing activities and projects that fall under the Finance & Budget Committee's area of responsibility

2.    Accept projects, assignments and tasks from the committee chair relevant to the committee's work

3.    Provide periodic and final results of projects, assignments and tasks to the committee chair

4.    Act at all times in the best interests of the long-term financial health and goals of the association



ELECTIONS



**United States Parachute Association®**

Copyright © 2019 by USPA

# 3-1: ELECTION OF USPA BOARD MEMBERS

## 3-1.1    INTRODUCTION

A.    The election of the USPA Board of Directors is conducted under the authority established in the USPA By-Laws, Article V.

B.    This section contains specific direction for the election procedure except for filling board vacancies.

## 3-1.2    AMENDMENT PROCEDURES

A.    Amendments to this section require a two-thirds majority vote of the board members present at a full meeting of the board.

B.    Proposals to amend this section must be submitted in writing to the board and distributed at least 15 days in advance of the meeting.

C.    The proposal will contain a general description of the action sought.

## 3-1.3    CANDIDATE QUALIFICATIONS

A.    For consideration as a potential candidate for election to the board, a USPA member must be:
1.    a regular member of USPA in good standing having completed a total of two years of membership
2.    18 years of age as of August 1 of the election year

B.    Regional director candidates must reside in the USPA region for which they seek election.

C.    No current employees of USPA are eligible for consideration as candidates and may not serve on the board.

## 3-1.4    RESPONSIBILITIES

A.    **April**: The chair of the Governance Committee will notify the executive director to place an announcement in the June issue of *Parachutist,* USPA's website and other means available about the forthcoming elections, soliciting applications from the general membership.

B.    **June 1**: USPA Headquarters will notify the membership of the election process and the deadline USPA Headquarters must receive election materials.

C.    **First business day of August** by close of business:
1.    All candidates must submit these election materials to headquarters
   a.    a Director Candidate Form (available online)
   b.    a suitable current portrait-style photograph
      (1)    Photos are to be provided in either electronic or physical media and in a format usable by headquarters
      (2)    Headquarters is not responsible for the procurement, storage, return of photos for incumbent or non-incumbent candidates, or the suitability for publishing of any photograph submitted after the deadline, although candidates may pre-submit photos for evaluation.
   c.    a filing fee of $50, made payable to USPA, the form of money order, credit card, check or cash.
2.    Director Candidate Biography forms and statements must be submitted electronically via the USPA website. Other items (picture and payment) can be provided by electronic means or paper.

D.    **By August 10**: USPA Headquarters will electronically notify the membership and all candidates of the valid list of candidates via the USPA website, newsletters and social media.

E.    **August 15** by close of business:
1.    Candidates may withdraw from the election.
2.    The Governance Committee will completely review all submissions.

F.    **October:** The biographies of the candidates and the ballot will be published in the October issue of *Parachutist* magazine, with the notation "Election Issue" on the cover of the magazine; the biographies of the candidates and the ballot will be published on the USPA website starting the first business day of October through the last business day of October.

G.    **October,** by close of business on the last business day: Deadline for receiving ballots.

H.    **November 10**: No later than this date, headquarters will have verified, counted, and/or tallied the ballots and distributed the results, notifying new and old

board members of the dates and place of the next board meeting.

I.  **February 28:** With the approval of the Governance Committee chair, the ballots will be destroyed.

## 3-1.5    CANDIDATE SELECTION AND NOMINATION

A.  All candidates complying with the requirements and deadlines outlined in this section will automatically be placed on the ballot.
    1.  Regional director candidates will be arranged alphabetically by region and alphabetically within each region.
    2.  National director candidates will be listed in accordance with a random draw conducted by the Governance Committee chair on some suitable public occasion.

B.  The names of all candidates will be printed on the ballot in identical typeface, and the word "incumbent" will not appear.

C.  A space will be provided on the face of any paper ballot for the voting member's signature, which is required for the paper ballot to be valid.

D.  The Governance Committee will be provided proposed sample ballot(s) well in advance of publication production deadline, which must be approved in every detail by the committee chair prior to use.

E.  Candidates will not be advised of the progress of the election, e.g., ballots received and/or votes for candidates.

## 3-1.6    PRESENTATION OF THE CANDIDATES

A.  The Governance Committee will review all material submitted by candidates to ensure it is factual, accurate, and of real value in assisting the membership to make a thoughtful decision on the merits of the various candidates.

B.  The committee chair should consider possible conflicts of interest among committee members when reviewing biographical forms.

C.  The biographic information and personal statements may be edited by the committee to conform to the space requirements and to provide some uniformity of verbiage and presentation.

D.  Personal statements will be limited to 250 words.

E.  The biographies of the candidates and the ballot will be published in the October issue of *Parachutist* magazine in the same manner in which they are listed on the ballot.
    1.  Biographies will be arranged in such a manner that the initial presentation gives each candidate equal space to the end of his or her space allotment.
    2.  Biographies will be preceded by the candidate's name, printed in boldface upper-case letters.
    3.  Where applicable, the word "incumbent" will follow the name of the candidate and be printed in upper and lower case light Roman type.
    4.  Photographs of each candidate will be published in portrait style, with the face and head area for each candidate approximately the same size when reproduced.
    5.  All statements by the candidates will be printed exactly as approved by the committee and will appear inside quotation marks in light face italic type identical in size and type family to the light face Roman type used elsewhere in the biography.

F.  A copy of the paper ballot will accompany the biographies of all candidates and will be published in *Parachutist* as a standard printed page and so positioned as to be immediately adjacent to the biographical material.

G.  Prior to June 15 of each election year, headquarters and the Governance Committee will schedule deadlines for the following:
    1.  Headquarters supplying the committee with all eligible candidate statements in electronic format with a hard copy of the original
    2.  The committee returning edited and length-limited statements to headquarters
    3.  Headquarters providing the final proof of the ballot(s) and election layout to the committee in hard copy, showing in detail each subsequent edit made by headquarters
    4.  The committee providing corrections to the final proof to headquarters in hard copy or via written instructions, after which any additional changes in any detail require committee chair approval

### 3-1.7    VALIDATION OF BALLOTS

A.   Valid ballots are those received in the approved format on or before the deadline for receiving ballots. Approved format is defined as:

    1.   a paper ballot contained in *Parachutist* magazine,

    2.   a printed ballot downloaded from the USPA website,

    3.   a photocopied ballot of either 1 or 2,

    4.   an electronic ballot prepared by USPA for online voting.

B.   Ballots containing more than eight national director votes or more than one regional director vote will not be considered valid for that portion incorrectly marked.

C.   Photocopies of paper ballots are encouraged but acceptable only if the voter individually marks them in original handwriting.

D.   Paper ballots that are faxed, electronically transmitted, or pre-marked will be declared invalid.

E.   Foreign members can vote for any one regional director, and up to eight national director candidates, including write-ins.

F.   Ballots will not be used by Headquarters to update a member's address of record.

### 3-1.8.    TABULATION OF BALLOTS:

A.   Upon receipt and not later than November 10 of each post-election year, headquarters will count and tally the ballots in conformity with this Section and other direction from the board and will publish the results.

B.   In case of a tie among regional director candidates or between national director candidates (for the last seat), confirmed by a re-count of the valid ballots, the seating of the winner will be determined by a toss of a coin.

    1.   Such toss is to be conducted in a manner and at a time and place as agreed upon by the president and the Governance Committee chair.

    2.   The toss will take place in front of at least three witnesses.

    3.   In the case of a three-way tie, a coin will be tossed for each candidate, with the odd coin signifying the winner.

Case 2:20-cv-01392-KJM-CKD Document 1 Filed 07/08/20 Page 66 of 101

# 3-2: USPA REGIONAL MAP



**NORTHEAST**
010-069

**MID-ATLANTIC**
201
220-246
270-299

**SOUTHEAST**
300-323
326-339
341-349
398-399

**EASTERN**
005
070-089
100-200
202-219

**MIDEASTERN**
247-268
430-497

**SOUTHERN**
324-325
350-397
400-427

**GULF**
700-714
716-729
755-759
770-787
789

**NORTH CENTRAL**
498-499
530-567
570-577
580-588

**CENTRAL**
500-528
600-658
660-693

**SOUTHWEST**
730-754
760-769
788
790-799
870-885

**MOUNTAIN**
800-816
820-834
840-847
850-865

**NORTHWEST**
590-599
835-838
970-986
988-999

**WESTERN**
889-891
900-935

**PACIFIC**
893-898
936-961
967-968

**Northwest region includes Alaska**

**Pacific region includes Hawaii**



## COMMUNICATIONS



**United States Parachute Association®**
Copyright © 2019 by USPA

# 4-1: USPA Publications

### 4-1.1 INTRODUCTION

A. Publications are a tangible means by which the United States Parachute Association communicates systematically with its members, with other appropriate interest groups, and with the public at large.

B. Because of their importance, it is imperative that publications be issued in accordance with policies, standards, and procedures which will assure accuracy, informative value, and consistency with the purposes of the association.

C. This section establishes those policies, standards, and procedures.

### 4-1.2 SCOPE

A. For the purposes of this section, "publications" includes official USPA documents prepared for distribution in print and sometimes duplicated in electronic format for distribution via the internet.

B. There are three general categories of USPA publications:
1. manuals
2. periodicals
3. notices

C. Forms and other administrative documents may be included within any category but are not considered publications for the purpose of this section.

### 4-1.3 MANUALS

A. USPA manuals contain the rules, requirements, and recommendations of the association in a given area of interest.

B. Each section of a manual is unique to that manual and not duplicated in any other manual.

C. The USPA Board of Directors is responsible for the content of the manuals.

D. The USPA executive director is responsible for number assignment, format, quality control, printing, and distribution.

E. The executive director may modify documents where required to maintain consistency with USPA policy. In all cases where the executive director modifies policy documents, these modifications must be immediately submitted to the Executive Committee and the relevant committee chair for review, who may further modify these documents for clarity of intent.

F. USPA manuals include but are not limited to the following:
1. USPA Governance Manual
   a. The Governance Manual includes those documents which deal with the policies and procedures necessary for USPA to conduct its association business.
   b. The sections contained therein are oriented toward administration, process, and governance.
   c. The relevant committee is responsible for proposing changes to the sections of the Governance Manual to the full board for approval.
   d. The Governance Manual is updated periodically as determined by the president.
2. Skydiver's Competition Manual
   a. All competition-related documents are contained in this manual.
   b. It is a standalone reference for all parties competing, judging, conducting, or otherwise involved in USPA-sanctioned competitions and records, and for those involved in the selection, training, and management of U.S. Teams.
   c. The Competition Committee is responsible for proposing changes to the Skydiver's Competition Manual.
3. Skydiver's Information Manual
   a. The Skydiver's Information Manual is the general skydiver's reference manual for safety and training.
   b. It includes recognition of skydivers for performance and achievement resulting from participation in and promotion of safe skydiving.

c. The Safety & Training and the Membership Services Committees are responsible for proposing changes to their respective and joint subsections of the Skydiver's Information Manual for full board approval.

d. The Skydiver's Information Manual is updated annually during the summer board meeting.

4. Instructional Rating Manual

a. The Instructional Rating Manual contains all documents related to the USPA instructional rating program.

b. It is a standalone reference for all parties engaging in instructional rating courses, including candidates for ratings and course directors, and it contains all requirements for obtaining and maintaining a USPA instructional rating.

c. The Safety & Training Committee is responsible for proposing changes to the Instructional Rating Manual for full board approval.

d. The Instructional Rating Manual is updated annually during the summer board meeting.

5. Group Member Manual

a. The Group Member Manual contains all documents related to the USPA group membership program.

b. The Group Membership Committee is responsible for proposing changes to the Group Member Manual for full board approval.

c. The Group Member Manual is updated periodically as determined by the chair of the Group Membership Committee.

6. Safety & Training Advisor Handbook

a. The Safety & Training Advisor Handbook serves as a guide to USPA Safety & Training Advisors for procedures specific to that office, related references, and relevant USPA Headquarters interactions.

b. The Group Membership Committee, Membership Services Committee, Regional Director Committee, and Safety & Training Committee share interest in USPA policy contained in the Safety & Training Advisor Handbook, and changes in those policies require the approval of the full board.

c. For S&TA administrative matters, the executive director may modify the Safety & Training Advisor Handbook.

d. The Safety & Training Advisor Handbook is updated in conjunction with the appointments of S&TAs by USPA Regional Directors following each election of the board.

7. Regional Directors Handbook

a. The Regional Directors Handbook serves as a guide to USPA Regional Directors for procedures specific to that office, related references, and relevant USPA Headquarters interactions.

b. The Group Membership Committee, Membership Services Committee, Regional Director Committee, and Safety & Training Committee share interest in USPA policy contained in the Regional Directors Handbook, and changes in those policies required the approval of the full board.

c. For Regional Directors administrative matters, the executive director may modify the Regional Directors Handbook.

8. Prior to any scheduled manual revisions, the appropriate committed chair(s) should coordinate a calendar schedule with USPA Headquarters to observe the following procedures for updating USPA manuals:

a. Headquarters provides an electronic working file of the existing manual in a format suitable for editing.

b. The committee chair returns the modified file showing all proposed additions and deletions in time for headquarters to prepare and circulate a working draft to all board members at least two weeks prior to voting.

c. The board is to vote to approve or disapprove the working draft as presented, following with motions as needed to further modify the working draft prior to publication of the updated manual.

d. These procedures may be modified for expediency at the direction of the president.

### 4-1.4   PERIODICALS

*Parachutist* is one of the principal media by which USPA as an organization communicates with its members.

A. Its purposes are to inform, educate, and entertain its readers; promote safe and enjoyable skydiving both

within and outside the skydiving community; provide a medium for the exchange of ideas and knowledge; recognize achievement of members and the association; promote camaraderie among skydivers for mutual benefit; and provide a medium of advertising for the benefit of members.

B.   The magazine, in general, will reflect the policies established by the board.

C.   Responsibility for editorial and advertising content, publication, and financial management of *Parachutist* magazine rests with the executive director as publisher and his or her designees, subject to the policy guidelines and procedures established by the board.

D.   The board recognizes that diversity of opinion is important for the progress of the sport and the association and welcomes such diversity as long as it is consistent with the general purpose of the association.

E.   Articles published in *Parachutist* should not state or imply that techniques, procedures, practices, or equipment are approved, sanctioned, or recommended by USPA, unless they have been first approved by the board for incorporation into USPA reference documents.

F.   Beyond the requirement that *Parachutist* reflect the general purposes of the association as stated in USPA reference documents, the executive director will ensure that the magazine adheres to generally accepted standards of mainstream media for decency, ethics, and quality on behalf of the membership as a whole.

G.   *Parachutist* will not be used for political purposes on behalf of or in support of candidates or incumbents seeking a position on the board.

H.   *Parachutist* advertising
1.   Is provided as a service to members
2.   Provides a source of revenue to help offset some of the production costs of the magazine
3.   Should not be at cross purpose to the overall goals and well being of the association
4.   Should include explanations or disclaimers if there is a potential for confusion or misrepresentation. (Advertising equipment which does not meet mandatory FAA requirements, for example, should be rejected, or it should contain such language that an exemption is pending FAA approval.)

## 4-1.5   NOTICES, BULLETINS, AND ADVISORIES

At any time, USPA will be prepared to provide time-sensitive information to its members or components of its membership on matters of safety, training, procedures, practices, or impending rules or regulatory changes provided by headquarters in the form of mass mailings, broadcast fax, e-mail, and the USPA website.

# 4-2: USPA WEBSITE

### 4-2.1    USPA WEBSITE(S)

A.   The USPA website is the electronic medium through which USPA communicates collectively with the membership and the public and with which it conducts e-commerce.

B.   The USPA website complements and supplements the USPA publications system.

C.   The executive director, in a parallel role to his responsibilities as publisher of *Parachutist*, is responsible for the design, content, and function of the website, consistent with the policies of the board.

### 4-2.2    OTHER WEBSITES

Use of the USPA Wings or other USPA logos as a graphic link to any official USPA web page (one under the design and control of USPA) requires expressed written permission and is subject to all USPA requirements for use of USPA copyrights and trademarks.

### 4-2.3    E-COMMERCE

A.   E-commerce includes online sales of USPA membership, services, and products.

B.   E-commerce transactions of routine USPA business are overseen by the executive director.

# 4-3: USPA COPYRIGHTS AND TRADEMARKS

## 4-3.1    INTRODUCTION

A.  The marks owned by USPA—its name, logos, and initials—function in three capacities:

1.  as a trademark signifying the source of USPA goods, such as magazines and other printed materials

2.  as a service mark signifying the source of USPA services

3.  as a collective membership mark for use by its members to signify their affiliation

B.  Under United States law, trademark rights accrue immediately through the use of a mark in commerce.

C.  Membership in USPA does not convey use of USPA's trademarks by its members, unless otherwise authorized by this section.

D.  Any person violating this policy is subject to prosecution under federal law.

E.  USPA members are subject to the disciplinary provisions of USPA's constitution and by-laws.

## 4-3.2    DESCRIPTION

USPA owns by registration or by use the marks listed in Section 4-4; this is not intended to be an all-inclusive list.

## 4-3.3    AUTHORIZATION

A.  General

1.  Except as noted in this section, under no condition will USPA's trademarks be used without the expressed written approval from the USPA executive director on behalf of the board.

2.  The executive director may enter into contracts on a case-by-case basis permitting the use of USPA trademarks, including USPA's Wings logo design, etc., for promotional and revenue-producing purposes.

3.  USPA rating holders
   a.  Any current USPA instructional or PRO rating holder may display the patches and decals issued or sold by headquarters for that rating.

   b.  In business or promotional materials, a current USPA rating holder may use the term "USPA [name of rating]." e.g., "USPA PRO rated" or "USPA Instructor."

4.  The USPA Wings or other USPA logos and trademarks may be included on promotional products distributed by USPA.

B.  Individual members: Any current regular or temporary member in good standing may display the USPA Wings decal or patch provided by headquarters bearing the USPA Wings logo design and the words "Member United States Parachute Association."

C.  Group members and Forgiegn Affiliates

1.  Any USPA Group Member or Foreign Affiliate in good standing may commercially use the appropriate phrase and logo as provided by USPA for business cards, letterhead, major media advertising, webpages and social media.

   a.  USPA Group Members may use the phrase "USPA Group Member" and associated logos.

   b.  Foreign Affiliates may use the phrase "Foreign Affiliate" and associated logo.

2.  USPA reserves the right to withdraw permission to use the phrases or logos at any time via written notification.

3.  Use of the USPA Wings logo design by itself is not authorized.

D.  Board of directors: Any current board member may use the USPA Wings logo on printed and electronic letterhead, business cards, and web pages or sites referring to his or her official duties, optionally including, as appropriate, "[National or (USPA Region) Regional] Director, U.S. Parachute Association."

E.  Safety & Training Advisors: Any current USPA Safety & Training Advisor may use the USPA S&TA logo on printed and electronic letterhead, business cards, and web pages or sites referring to his or her official duties, followed by the inscription, "U.S. Parachute Association Safety & Training Advisor."

# 4-4: USPA TRADEMARKS AND LOGOS



USPA

SKYDIVE

UNITED STATES
PARACHUTE ASSOCIATION





*Trademarks*                 *USPA Wings logos*                 *USPA Safety & Training Advisor logo*



 



*USPA Group Member and Foreign Affiliate logos*          *Accelerated Freefall logo*









*USPA PRO Rating logos*                 *Parachutist logos*

**USPA Governance Manual   •   Section 4: Communications**



*U.S. Parachute Team design (round)*



*U.S. Parachute Team (ram-air)*



*U.S. Parachute Team (current)*



*U.S. Team logo*



*AAD Fund logos*



*U.S. Parachute Team Trust Fund logos*



*Eagle and Falcon award logos*



*3-D Award logo*



*CCS Award logos*



Skydiver's Competition Manual cover







FS logos (SCM)




Canopy formation logo (SCM)




Sport accuracy logo (SCM)




Airport logo (SCM)




U.S. delegation logo (SCM)








NCPC logos (SCM)




Record (SCM)




Stylist (SCM)





*Vertical Formation Skydiving (SCM)*





*Accuracy logo (SCM)*







*Canopy Piloting (SCM)*











*AE logos (SCM)*



# Safety & Training



**United States Parachute Association®**

Copyright © 2019 by USPA

# 5-1: SAFETY & TRAINING COMMITTEE

### 5-1.1 INTRODUCTION

The Safety & Training Committee of the USPA Board of Directors is established as a standing committee by USPA Governance Manual Section 1-1, Constitution and By-Laws, Article VIII, Section 2. This section outlines the purpose, structure, and responsibilities of this committee and the responsibility of the committee chair. These functions and responsibilities will undoubtedly fluctuate with time, and the section will be amended accordingly. The main purpose of this section is to publish a document for the use of the board and to outline the scope of the committee for its members and future chair.

### 5-1.2 PURPOSE OF THE COMMITTEE

The Safety & Training Committee

A. Keeps the Basic Safety Requirements and training recommendations current and consistent with prevailing equipment procedures, techniques, and knowledge in skydiving

B. Keeps abreast of current events, techniques, and equipment affecting safety and training, and publishes guidance to the membership

C. Keeps current on accidents and fatalities in the sport, analyzes for cause, and publishes summaries in *Parachutist* magazine

D. Supervises and provides guidance and direction to the Safety & Training Advisor (S&TA) program

E. Establishes criteria for licensing of skydivers and ensures smooth functioning of the program

F. Establishes criteria for certifying USPA Coaches, Instructors, and Instructor Examiners and ensures smooth functioning of the program

G. Reviews training materials, pamphlets, films, and other aids for the training of skydivers

### 5-1.3 RESPONSIBILITIES

The Safety & Training Committee Chair

A. Ensures that the functions of the Safety & Training Committee listed above are satisfied

B. Leads the committee in identifying current problem areas within its area of responsibility, establishes projects to solve problems, and assigns specific tasks to committee members to produce an end product which can be disseminated to the membership

C. Acts as focal point for all committee projects, receives recommendations, informs members of progress, consolidates contributions of the committee, and publishes the findings

D. Receives from USPA Headquarters all membership inquiries in regards to safety and training, answers the members' inquiries, establishes new projects to satisfy these inquiries if necessary, assigns specific tasks to committee members, and coordinates the work progress

E. Ensures that the president and other necessary personnel are kept informed of the committee projects and progress

F. Chairs all committee meetings and presents the committee reports to the board

G. During board meetings, the S&T Committee chair:
   1. Chairs the meetings
   2. Establishes projects
   3. Assigns tasks to individuals
   4. Consolidates their efforts
   5. Submits the final reports to the board

H. Between board meetings:
   1. Reviews and advises the president of committee's progress
   2. Handles S&T correspondence from headquarters and from the membership

# *Section 6*

## COMPETITION



## United States Parachute Association®

Copyright © 2019 by USPA

# 6-1: COMPETITION COMMITTEE

### 6-1.1   INTRODUCTION

The Competition Committee of the USPA Board of Directors is established as a standing committee by USPA Governance Manual, Section 1-1, Constitution & By-Laws, Article VIII, Section 2. This section outlines the purpose, structure, and responsibilities of this committee and the committee chair. These functions and responsibilities will undoubtedly fluctuate with time, and the section will be amended accordingly. The main purpose of this section is to publish a document for the use of the board and to outline the scope of the committee for its members and future chair.

### 6-1.2   STRUCTURE

The committee is composed of at least five members of the board and is chaired by a board member appointed by the president. Besides selecting the committee members, who must be members of the board, the chair can name an unlimited number of advisors.

### 6-1.3   PURPOSE

The Competition Committee is responsible for all issues concerning skydiving competition, including judging, U.S. Teams and world records. In addition, the committee will provide direction regarding competition to our delegates to the International Parachuting Commission (IPC).

### 6-1.4   PROCEDURES

An agenda of each meeting will be created at least 30 days prior to the meeting.

### 6-1.5   RESPONSIBILITIES

A.   Ensures that all provisions of the Skydiver's Competition Manual are followed.

B.   Establishes all matters pertaining to skydiving competition including collegiate championships, world records, and judging procedures

C.   Maintains and updates the Skydiver's Competition Manual

D.   In accordance with the Skydiver's Competition Manual and in cooperation with the board conducts annual national skydiving competition events

E.   Maintains and continuously updates a database of all current USPA judges and makes the database available to the membership

F.   Recommends to the board the appointment of new international judges

G.   Maintains communication with the International Parachuting Commission committees dealing with competition through the USPA IPC delegate, alternate delegate, and other official USPA representatives to the IPC

H.   Monitors and reacts to changes in international competition rules and events

I.   Develops skydiving as a collegiate sport on a level with other minor college sports

*Section 7*

## MEMBERSHIP



**United States Parachute Association®**
Copyright © 2019 by USPA

# 7-1: Membership Services Committee

## 7-1.1   INTRODUCTION

The Membership Services Committee of the USPA Board of Directors is established as a standing committee by USPA Governance Manual Section 1-1, Constitution and By-Laws, Article VIII, Section 2. This section outlines the purpose, structure, and responsibilities of this committee and the responsibility of the committee chair.

## 7-1.2   PURPOSE

The Membership Services Committee is overall responsible for the oversight of the services provided by the association to the individual members to include processing of memberships, preparation of awards, implementation of membership benefit programs, and publication of USPA general interest documents disseminated via print and electronic media.

## 7-1.3   FUNCTIONS

The Membership Services Committee

A.   Oversees the individual membership services processing function to include membership application and renewal, awards, insurance, and affinity programs

B.   Reviews and evaluates USPA performance, accomplishment, and tenure programs

C.   Recommends to the board nominations for USPA, NAA, and FAI awards which require board approval

D.   Ensures that USPA individual membership publications properly serve the members in terms of quality, timeliness, and balance of general membership interests, consistent with resources available

E.   Maintains effective communications with the USPA staff on individual membership services related programs and issues

## 7-1.4   RESPONSIBILITIES

Membership Services Committee Chair

A.   Ensures that the functions of the committee listed above are satisfied

B.   Leads the committee in identifying current and potential problem areas within its area of responsibility, initiates projects to solve problems, and assigns specific tasks to committee members to deliver a product which will best serve the membership

C.   Acts as the focal point for all committee projects, receives recommendations, informs members of progress, consolidates contributions of the committee, and reports the findings

D.   Receives from the executive director comments and inquiries which require committee action or which can assist the committee in the evaluation of membership services programs and projects

E.   Ensures that the president, other board members, and the executive director are kept informed of committee projects and progress as appropriate

F.   Ensures agendas for committee meetings are prepared and disseminated to committee members, the president and executive director, in accordance with Governance Manual Section 1-2 and that motions to be presented for board approval are properly prepared

G.   Chairs all committee meetings and presents the committee's report to the board

# 7-2: GROUP MEMBERSHIP COMMITTEE

## 7-2.1    INTRODUCTION

The Group Membership Committee of the board is established by Article VIII, Section 2 of the By-Laws as a standing committee. This section outlines the purpose, function, procedures, and responsibilities of the committee and its chair.

## 7-2.2    PURPOSE

The purpose of this committee is to represent the interests of group members before the board and for the benefit of individual members.

## 7-2.3    FUNCTIONS

It will be a function of the Group Membership Committee to—

A.    promote group member adoption of policies, practices, and procedures, including the the USPA Basic Safety Requirements, that enhance the safety of skydiving

B.    develop and disseminate information found in Section 4 of the Group Membership Manual, USPA Skydiving Aircraft Operations, concerning the safe operation and maintenance of aircraft used for skydiving.

C.    supervise and direct the administration of the Group Member Program, Section 1 of the Group Membership Manual

D.    instill ethical business practices among group members

E.    promote communication and the sharing of ideas among group members

F.    consider issues before the board that affect the business interests of group members

G.    assist in the planning and conduct of the USPA Drop Zone Operators Conference

## 7-2.4    COMMITTEE PROCEDURE

A.    The committee convenes during the board meetings. For simplicity and uniformity, the following committee procedures are recommended:

1.    Previous work of the committee should be reviewed.

2.    Recommendations to the board or president should be formulated.

3.    A member of the committee should be designated by the Group Membership Committee chair to draft any recommended resolutions or other documents, if these have not been previously prepared.

4.    Proposed drafts of resolutions or other documents should be acted upon by the committee and those approved should be submitted subsequently to the board or other appropriate authority.

5.    New matters to come before the committee should be considered.

6.    Projects for further research should be assigned to committee members or other interested parties.

B.    At other times, the committee may also conduct business by mail, fax, e-mail, or conference call.

## 7-2.5    RESPONSIBILITIES OF THE COMMITTEE CHAIR

The Group Membership Committee Chair—

A.    is responsible for ensuring that the functions of the Group Membership Committee are satisfied

B.    leads and coordinates committee projects and assigns specific tasks to committee members

C.    chairs all committee meetings and presents committee reports to the board

D.    ensures that the president and other necessary personnel are kept informed of the committee projects and progress





**United States Parachute Association®**

Copyright © 2019 by USPA

# APPENDIX A: INDEMNIFICATION AND LIMITATION OF LIABILITY

## SECTION 1. LIMITATION OF LIABILITY

To the fullest extent that the New York Not-for-Profit Corporation Law, as it exists on the date hereof or may hereafter be amended, permits the limitation or elimination of the liability of directors or officers of the USPA for breach of fiduciary duty, and provided that a director or officer shall have acted in good faith, for a purpose he or she reasonably believed to be in the best interests of the USPA, then such a director or officer shall not be liable to the USPA for monetary damages. In the case of actions taken while serving another entity in any capacity of the request of the USPA, the requirement shall be that the director or officer have acted in good faith for a purpose which he or she reasonably believed to be not opposed to the best interests of the USPA. Any amendment to or repeal of this Appendix A shall not adversely affect any right or protection of a director or officer of the USPA for or with respect to any acts or omissions of such director or officer occurring prior to such amendment or repeal.

## SECTION 2. INDEMNIFICATION

To the fullest extent permitted and in the manner prescribed by the New York Not-for- Profit Corporation Law, and any other applicable law, the USPA shall indemnify, against all liability incurred in a proceeding (and advance reasonable expenses to), any director or officer of the USPA, who is, was, or is threatened to be made a party to or participant in any such threatened, pending, or completed action, suit, or proceeding (whether civil, criminal, administrative, arbitrative, or investigative), including an action by or in the right of the USPA, by reason of the fact that he or she is or was such a director or officer or is or was serving at the request of the USPA as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise; provided that that director or officer notifies the USPA's Executive Director of the threatened or actual litigation promptly upon learning of it and complies with reasonable requests from the USPA staff, Board of Directors or the Executive Committee of the Board (i) for information concerning the matter, and (ii) to facilitate having the matter, including defense of any litigation, covered by one or more liability insurance policies carried by the USPA. The Board of Directors is empowered, by majority vote of a quorum of disinterested directors, to contract in advance to indemnify any director or officer.

## SECTION 3. OTHER PERSONS

The Board of Directors is empowered, by majority vote of a quorum of disinterested directors, to cause the USPA to indemnify, or contract in advance to indemnify, and advance reasonable expenses to, any person not specified in Section 2 hereof who was or is a party to any proceeding by reason of the fact that he or she is or was an employee or agent of the USPA or is or was serving at the request of the USPA as a director, officer, employee, or agent of another corporation, partnership, joint venture, employee benefit plan, or other enterprise, to the same extent as if such person were specified as one to whom indemnification is granted in Section 2 hereof.

## SECTION 4. INSURANCE

The USPA may purchase and maintain insurance to indemnify it against the whole or any portion of the liability assumed by it in accordance with this Appendix A and may also procure insurance, in such amounts as the Board of Directors may determine, on behalf of any person who is or was a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise, against any liability asserted against or incurred by such person in any such capacity or arising from his status as such, whether or not the USPA would have power to indemnify him or her against such liability under the provisions of this Appendix A.

## SECTION 5. SCOPE

The provisions of this Appendix A shall be applicable to all actions, claims, suits, or proceedings commenced after the adoption hereof, whether arising from any action taken or failure to act before or after such adoption. No amendment, modification, or repeal of this Appendix A shall diminish the rights provided hereby or diminish the right to indemnification with respect to any claim, issue, or matter in any then pending or subsequent proceeding that is based in any material respect on any alleged action or failure to act prior to such amendment, modification, or repeal.

## SECTION 6. CONTINUOUS COVERAGE

Reference herein to directors, officers, employees, or agents, shall include former directors, officers, employees, and agents, and their respective heirs, executors, and administrators.

# APPENDIX B: WHISTLEBLOWER POLICY

## UNITED STATES PARACHUTE ASSOCIATION, INC. WHISTLEBLOWER POLICY

### I. PURPOSES

The United States Parachute Association, Inc. (the "Organization") is committed to honest, ethical and lawful conduct, full, fair, accurate, timely and transparent disclosure in all public communications, and compliance with applicable laws, rules and regulations. In furtherance of these commitments, all directors, officers, employees and contractors of the Organization (each, a "Responsible Person") must at all times act in accordance with all applicable laws, legal regulations and policies of the Organization and assist in ensuring that the Organization conducts its business and affairs accordingly.

This Whistleblower Policy (this "Policy") (a) establishes procedures for the reporting and handling of concerns regarding action or suspected action taken by or within the Organization that is or may be illegal, fraudulent or in violation of any policy of the Organization, as well as any other matter that could cause serious damage to the Organization's reputation (each, a "Concern"), and (b) prohibits retaliation against any employee of or contractor with the Organization (each, a "Covered Person" or "you") who reports a Concern in good faith.

By appropriately responding to Concerns, we can support an environment where compliance is valued and ensure that the Organization is meeting its ethical and legal obligations.

### II. TYPES OF CONCERN YOU MAY RAISE

You are encouraged to disclose to and seek guidance from an appropriate supervisor or manager if you believe any Responsible Person has engaged, is engaging, or may engage in any illegal or unethical behavior or has violated, or may violate any law, rule, regulation or policy of the Organization. Such reportable activity may include, for example, financial wrongdoing (including circumvention of internal controls or violation of the accounting policies of the Organization), fraud, harassment, or any other conduct that is illegal, unethical or proscribed by law, legal regulations or any adopted policy of the Organization.

### III. HOW TO RAISE A CONCERN

Concerns may be submitted either in writing or orally. No form is required to submit a Concern, but you are encouraged to provide as much information and detail as possible so that the Concern can be properly investigated. A Concern may be submitted:

• To the administrator of this Policy (the "Policy Administrator"), at [insert contact information];

• By discussing it with a supervisor or manager, who will in turn forward the Concern to the Policy Administrator for review where appropriate; or

• In writing to the Chair of the Organization's Board of Directors or of the Board's Executive Committee at [insert contact information], who will in turn forward the Concern to the Policy Administrator for review where appropriate.

Concerns may be raised anonymously.

### IV. PROCEDURES FOR RECEIVING AND REVIEWING CONCERNS

Any supervisor, manager, or other person receiving a Concern should contact the Policy Administrator, who will coordinate further action.

The Policy Administrator will assess each Concern on a preliminary basis to determine to what extent an investigation into the Concern is required, and will direct all aspects of the investigation of any Concern. All investigations will be conducted in a confidential and sensitive manner, so that information will be disclosed only as needed to facilitate review of the investigation materials or otherwise as required by law. You must cooperate as necessary in connection with any such investigation. In the event a Concern involves or implicates the Policy Administrator, the Policy Administrator will promptly recuse himself or herself from the investigation and inform the Board or Executive Committee in writing. The Board or Executive Committee may investigate such Concern or appoint impartial attorneys or other professionals to investigate the Concern.

### V. RECORDS OF CONCERNS AND INVESTIGATION REPORTS

The Policy Administrator will maintain a written record of all Concerns summarizing in reasonable detail for each Concern: the nature of the Concern (including any specific allegations made and the persons involved); the date of receipt of the Concern; the current status of any investigation into the Concern and information about such investigation (including the steps taken in the investigation, any factual findings, and the recommendations for corrective action); and any final resolution of the Concern. The Policy Administrator will distribute an update of this record to the Chair of the Board or Executive Committee in advance of each regularly scheduled meeting.

## VI. CONFIDENTIALITY

All Concerns received will be treated confidentially or anonymously, as applicable, to the extent reasonable and practicable under the circumstances.

## VII. NO RETALIATION AGAINST WHISTLEBLOWERS

It is the Organization's policy to encourage the communication of bona fide Concerns relating to the lawful and ethical conduct of the Organization's business. It is also the policy of the Organization to protect those who communicate bona fide Concerns from any retaliation for such reporting. No adverse employment action may be taken and retaliation is strictly prohibited, including, without limitation, intimidation, harassment, discrimination, coercion, or otherwise, whether express or implied, against any Covered Person who in good faith reports any Concern or assists in an investigation of, or the fashioning or implementation of any corrective action or response made in connection with, any Concern. Any person who violates this prohibition against retaliation will be subject to appropriate disciplinary action, which may include termination of employment or other relationship with the Organization.

## VIII. POLICY DISTRIBUTION

A copy of this Policy will be distributed to each Covered Person promptly following the adoption of or amendments to this Policy, and at such time as a person becomes a Covered Person.

## IX. POLICY ADOPTION AND OVERSIGHT

The Board of Directors or its Executive Committee is responsible for providing oversight of the adoption and implementation of, and compliance with this Policy. Only directors qualifying as "independent directors" within the meaning of the New York Not-for-Profit Corporation Law, as in effect from time to time, are permitted to participate in any Board or Committee deliberations or vote on matters relating to this Policy.

EXHIBIT 2

To whom it may concern,

Re: Yuri Garmashov

My name is Rob Pooley (USPA# 155136), I am a currently a suspended tandem instructor examiner. I used to conduct tandem instructor rating courses at The Parachute Center in Lodi, CA.

Approximately one year ago July 25th 2015, my certification from the U.S. Parachute Association and UPT was suspended for admistrative reasons. In order to continue working, I approached Yuri Garmashov to see if I could work under him. Yuri agreed that I could work under his supervision while we were at The Parachute Center. Yuri would have primary responsibility for training and examination, and I would assist with coordinating and evaluations. Yuri was always very focused on safety and would not sign off on a candidate unless he was fully satisfied the student was ready.

Around May 2016, Yuri left on a trip for Europe and did not return until August. During that time, I continued training students by myself under the assumption that it did infact meet the FAA guidlines. To make sure students would receive their ratings, I assisted the candidates in completeing their paperwork, signed their forms with Yuri's name (without him knowing) and held the paperwork for Yuri's return at which time I could tell him about the situation and have him help me make sure the candidates met all the requirements for the UPT and USPA ratings. In retrospect, I realize it was wrong of me to assume Yuri would have been okay with this situation. Yuri was not aware of the training we were doing here while he was away. Yuri did not consent to me signing his name. Yuri was also not compensated for me signing his name.

While Yuri was gone several of his students: Marcus Turula, Eduardo Kim, Aaron Maxson, Taylor Smits, Luis Lopes Fleitas, Richard Keir and Gareth Hemingway gave me their paperwork and asked to send it in for them, but I didn't.

Around August 12, 2016, I spoke with Joshua Hall, from the USPA. I told the him that I intended to send the paperwork to Yuri while he was in Europe so he could review and submit. Yuri did not know that

this was my intent. Yuri did not do anything wrong and I regret bringing him into this situation.

One of the students I instructed while Yuri was away was Yong Kwon. Yuri did not know that I instructed this student or that I assisted Yong in completeing his paperwork with Yuri's signiturers. I believe Yong was properly trained by me. However, Yuri had nothing to do with Yong's training and did not supervise it. I never gave Yuri any of the money paid by Yong or any other student while he was in Europe.

I am giving this statement freely, without being pressured by any threats or by being promised anything in return. Yuri is simply a good examiner and I regret that his name is being tarnished by my using his signature.

If you have any questions, you can contact me by phone or by email.

Sincerely,

Rob Pooley

To Whom it may concern,

In regards to Yuri Garmashov and his involvement in the tandem training at the Parachute Center in Acampo, CA. during the time he was in Russia in the Summer 2016.

Yuri Garmashove was not taking part in any tandem training, directly or indirectly, at the Parachute Center while he was out of town; and, to the best of my knowledge would have had no information as to what was happening during his absence.

A letter was written by myself, on Yuri's behalf. Stating I did not believe he had any knowledge of what was going on at the Parachute Center while he was in Russia. The validity of that letter was questioned and therefore in addition to e-mailing this letter, I will make a notarized hard copy available.

Regards,

Rob Pooley

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Sacramento _____ )

On _2/2/2017_____ before me, _Bobbi L. Lewis, Notary Public_____
(insert name and title of the officer)

personally appeared _Rob Pooley*********************************____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Bobbi L. Lewis__ (Seal)

**BOBBI L. LEWIS**
COMM. #2113470
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
My Comm. Expires June 26, 2019